**In the Interest of A.B., a Minor.**

**Appeal of B.B., Mother.**

Superior Court of Pennsylvania.

Filed March 4, 2013.

Submitted Dec. 10, 2012.

Edward M. Flannery, Philadelphia, for appellant.

Andrea L. Freedman, Public Defender and Patricia A. Korey, Public Defender, Philadelphia, for A.B., participating party.

James W. Martin, Philadelphia, for B.B., participating party.

Elmyra Manigault and Cynthia N. Keller, Philadelphia, for Philadelphia Dept. of Human Services, participating party.

BEFORE: MUSMANNO, J., WECHT, J., and PLATT, J.*

OPINION BY PLATT, J.:

B.B. (Mother) appeals from the order of the Court of Common Pleas of Philadelphia County, entered July 24, 2012, adjudicating her daughter, A.B. (Child) (born December 28, 2011), dependent. We affirm.

A Philadelphia police officer arrested Mother on a charge of child endangerment on July 6, 2012, after she left Child alone at home while she attended a party. Child was six months old at the time. Philadelphia's Department of Human Services (DHS) subsequently placed Child in foster care pursuant to an order of protective custody. (N.T., 7/24/12, at 15, 18, 75).

At the adjudicatory hearing held in this matter on July 24, 2012, Philadelphia Police Officer Phillip Muscarnero testified that, while on duty on July 6, 2012, be-

---

* Retired Senior Judge assigned to the Superior Court.

tween midnight and one a.m., he went to the 2400 block of Camac Street in response to "a [r]adio call for a person screaming on the highway." (*Id.* at 5). Officer Muscarnero arrived to find Mother, the owner of the home where Mother resided, male and female acquaintances of Mother, and a male, D.B., who was identified to the officer as Child's Father. Mother's female acquaintance was holding Child, who was crying. (*Id.* at 5–7, 9). As the officer arrived, Father pedaled away on a bicycle, "screaming and yelling." (*Id.* at 5). Mother walked away from the scene and from Child and stopped several houses down the street. She refused to speak to the officer and did not respond to his request that she console Child. (*Id.* at 10, 13).

When Officer Muscarnero was asked how he came to the conclusion that Child had been left unattended, he testified:

> After personally speaking to the Mother myself, I found out that the Mother went to a friend's house, to a party, and left [Child] home alone sleeping. Stated that [C]hild sleeps for nine hours at a time. Stated that the party was very close, yet returned in a cab. I also asked the Mother, you know, if this is what happened and she said, Yes, I wanted to go to the party to see my friend. She also stated, I will take any consequence that happens to me, and started blurting out things, such as, You know, I was thinking about putting this baby up for adoption, as well.

(*Id.* at 11–12).

Officer Muscarnero arrested Mother for endangering the welfare of a child and, when Mother failed to name any family members who might care for Child, he took Child to the DHS facility on Arch Street. (*Id.* at 15). Officer Muscarnero testified that Mother showed no concern for Child when he told her that he was going to place Child with DHS. (*Id.* at 13–14).

Days after Child's placement, DHS social workers observed that she was overweight, presented with a flat head, did not use her extremities to reach for things, and had an overall very flat affect, with limited interaction with others, all of which is unusual for a child of her age. (*Id.* at 29–30). Child has shown improvement in all these areas since she entered foster care. (*Id.* at 32).

DHS social worker Lakeisha White testified that Mother told her that she thought her roommate would arrive home within ten minutes after she left and that Child would not be alone for more than one half hour. (*Id.* at 17–18, 23–24).

When DHS began to question Mother as to the circumstances surrounding the July 6, 2012 incident, and Child's future care and support, Mother's counsel objected, stating:

> I am advising my client to not only take the 5th under the United States Constitution, but also the rights under the Commonwealth's Con[s]titution to remain silent.

(*Id.* at 34). When DHS resumed its examination of Mother, she answered a series of questions regarding Child's Father and his involvement with Child, but refused to answer any questions relating to the July 6, 2012 incident.

At the conclusion of the hearing, during closing argument, counsel for Mother admitted that Mother had left Child alone:

> The facts are ... she left [Child] at home that night, July 6, 2012, she left [Child] alone. Was she wrong? Yes. That's a fact. I am not disputing that for purposes of this hearing.

(*Id.* at 75). Counsel argued, however, "There is nothing to indicate that July 6th was anything other than an aberration[,]"

that did not justify an adjudication of dependency. (*Id.* at 76).

In finding Child to be dependent, the trial court held that Mother's conduct in leaving Child unattended, "whether it was two minutes or two hours[,]" was behavior that "[c]learly ... put [Child] at risk." (*Id.* at 77). In addition, the trial court cited Officer Muscarnero's observation that, at the time of the incident, "Mother had no care, concern, whatsoever for [C]hild's welfare or the safety of [C]hild." (*Id.* at 77–78). The trial court found the testimony of Officer Muscarnero to be "clear with regard to that." (*Id.* at 78). The trial court concluded that, "[C]hild is at risk with ... Mother and, therefore, I commit [Child] to DHS." (*Id.*).

The trial court entered its order adjudicating Child dependent on July 24, 2012. Mother filed her notice of appeal and statement of errors complained of on appeal on August 21, 2012. The trial court issued its opinion on September 18, 2012. *See* Pa.R.A.P. 1925.

■ Mother presents the following question for our determination: "Did the trial court err and abuse its discretion in denying Mother's right to a fair hearing?" (Mother's Brief, at 3). Our Supreme Court set forth our standard of review for dependency cases as follows.

[T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.,* 608 Pa. 9, 9 A.3d 1179, 1190 (2010) (citation omitted).

■ To adjudicate a child dependent, a trial court must determine, by clear and convincing evidence, that the child:

is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk.

42 Pa.C.S.A. § 6302. "Clear and convincing" evidence has been defined as testimony that is "so clear, direct, weighty, and convincing as to enable the trier of facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *In re C.R.S.,* 696 A.2d 840, 843 (Pa.Super.1997) (citation omitted).

■ In accordance with the overarching purpose of the Juvenile Act "[t]o preserve the unity of the family whenever possible," *see* 42 Pa.C.S.A. § 6301(b)(1), "a child will only be declared dependent when he is presently without proper parental care and when such care is not immediately available." *In re R.T.,* 405 Pa.Super. 156, 592 A.2d 55, 57 (1991) (citation omitted). This Court has defined "proper parental care" as "that care which (1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child." *In re C.R.S., supra* at 845 (citation omitted).

■ In regard to when a child should be removed from parental custody, we have stated:

The law is clear that a child should be removed from her parent's custody and placed in the custody of a state agency only upon a showing that removal is clearly necessary for the child's well-being. In addition, this court had held

that clear necessity for removal is not shown until the hearing court determines that alternative services that would enable the child to remain with her family are unfeasible.

*In re K.B.*, 276 Pa.Super. 380, 419 A.2d 508, 515 (1980) (citations omitted). In addition, this Court has stated: "[I]t is not for this [C]ourt, but for the trial court as fact finder, to determine whether [a child's] removal from her family was clearly necessary." *In re S.S.*, 438 Pa.Super. 62, 651 A.2d 174, 177 (1994).

Here, in Mother's "Matter Complained of on Appeal," Mother lists one issue: "The trial court erred when it failed to assure Mother a fair hearing." (Matter Complained of on Appeal, 8/21/12, at 1). Pennsylvania Rule of Appellate Procedure 1925 provides that a Rule 1925(b) statement "shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." Pa.R.A.P. 1925(b)(4)(ii). "Issues not included in the Statement and/or not raised in accordance with the provisions of this [Rule] are waived." Pa.R.A.P. 1925(b)(4)(vii).

 This Court has considered the question of what constitutes a sufficient 1925(b) statement on many occasions, and it is well-established that "Appellant's concise statement must properly specify the error to be addressed on appeal." *Commonwealth v. Hansley*, 24 A.3d 410, 415 (Pa.Super.2011), *appeal denied*, 613 Pa. 642, 32 A.3d 1275 (2011) (citation omitted). "[T]he Rule 1925(b) statement must be specific enough for the trial court to identify and address the issue an appellant wishes to raise on appeal." *Id.* (brackets, internal quotation marks, and citation omitted). Further, this Court may find waiver where a concise statement is too vague. *Id.* "When a court has to guess what issues an appellant is appealing, that

is not enough for meaningful review." *Commonwealth v. Dowling*, 778 A.2d 683, 686 (Pa.Super.2001) (citation omitted). "A Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all." *Id.* at 686–87.

 In the instant matter, the trial court considered Mother's Rule 1925(b) statement and concluded that Mother had waived any issue on appeal, finding that:

Mother's blanket statement that the [trial c]ourt erred when it failed to assure her a fair hearing is overly broad and does not provide any explanation as to how the [trial c]ourt failed to give Mother a fair hearing. Mother has raised a boilerplate claim that fails to identify any specific issues.

(Trial Court Opinion, 9/18/12, at 2). We agree with the trial court that Mother has waived any issues she may have had on appeal in this matter by failing to identify any specific issue on appeal. *See* Pa. R.A.P. 1925(b)(4); *Hansley, supra* at 415.

Moreover, Mother's claim on appeal is without merit. The thrust of Mother's argument is that she did not receive a fair hearing because the trial court caused "Mother to suffer harassment and undue embarrassment" when it overruled her attorney's objection to having her testify, and she was forced to take the stand and invoke her privilege against self-incrimination. (Mother's Brief, at 14).

In support of her argument, Mother cites Pennsylvania Rule of Evidence 611, which provides:

The court shall exercise reasonable control over the mode of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time and (3) protect witnesses

from harassment or undue embarrassment.

Pa.R.Evid. 611(a). Mother argues:

> Mother was facing a criminal trial for her actions which le[ ]d to her arrest. As [M]other's actions which led to her arrest are not in dispute, the only purpose of calling her as a witness and posing a question about her actions was to force her to exercise her constitutional rights. The only purpose of posing a series of questions about her actions was to harass her or causing undue embarrassment. The trial court was charged to protect witnesses from harassment or undue embarrassment. The trial court must ensure that the parties have a fair hearing. That the parties are treated fairly is a corollary of a fair hearing.
>
> The trial court's denial of a request to protect a witness from harassment or undue embarrassment was an abuse of discretion.... The trial court failed to conduct a fair hearing.

(Mother's Brief, at 9).

Mother does not cite, and we are unaware of, anything in our law that permits a witness to excuse herself from testifying if she decides that the facts of the incident in question are "not in dispute." (*Id.*). Our examination of the record reveals that DHS's attorney asked a series of questions of Mother, some of which were specific to the incident of July 6, 2012, and some which related to Mother's and Father's employment and the care Child received from each. (*See* N.T., 7/24/12, at 33–45). There is nothing in the record to indicate that Mother was harassed in any way and, if Mother was embarrassed to invoke her privilege against self-incrimination, that embarrassment was self-inflicted.

 Our review of the record in this matter reveals that the trial court did not abuse its discretion and fail to protect Mother from harassment or undue embarrassment. Further, the record supports the trial court's findings that Child is dependent and that placement of Child with DHS is warranted and appropriate.

Order affirmed.