J-A12041-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: A.M.P., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: A.M.P. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1644 WDA 2016 |

Appeal from the Order September 30, 2016
In the Court of Common Pleas of Allegheny County
Family Court at No(s):  CP-02-DP-687-2016 - FID 02-FN-837-2016

BEFORE:  OLSON, SOLANO and RANSOM, JJ.

MEMORANDUM BY RANSOM, J.:                    **FILED JULY 11, 2017**

KidsVoice ("GAL"), guardian *ad litem* for A.M.P., appeals from the September 30, 2016, order dismissing the dependency petition filed by the Allegheny County Office of Children, Youth, and Families ("CYF").  We affirm.

The trial court made the following findings of fact:

[A.M.P.] was born [i]n November [], 2015; she is 10 months old. . . . [A.M.P.] has been diagnosed with failure to thrive.  She currently weighs [13 pounds, 11 ounces.  [A.M.P.] also has severe eczema.  [A.M.P.] was admitted to Children's Hospital of Pittsburgh on July 14, 2016, drastically underweight – 10 pounds, 10 ounces.  She was dehydrated with severe electrolyte deficiencies.  Her condition was critical.

[A.M.P.] was breast fed for the first few months of her life.  The doctors believe that [A.M.P.] has an allergy to milk including breast milk, which may be the source of her inflamed bowels, which would contribute to her not eating, and not gaining weight.  While [A.M.P.] was at Children's Hospital, there were attempts made to give her formula.  [A.M.P.] refused a bottle.  She was given [a nasogastric] tube (with some hesitation by [A.C. ("Mother")]) and was able to gain a little more than [two]

pounds. On July 28, 2016, [A.M.P.] weighed 12 pounds, 14 ounces at the time of her discharge from [Children's Hospital].

She was discharged to the Children's Institute for feeding rehabilitation. [A.M.P.] has an oral aversion that makes her reject bottles and some foods. . . . [A.M.P.] was in the Children's Institute from July 28, 2016 until August 12, 2016. . . . [A.M.P.] weigh[ed] 12 pounds, 14 ounces at admission and 14 pounds, 1 ounce upon discharge.

The recommended treatment for [A.M.P.'s eczema] is a topical steroid. Mother was reluctant to utilize the steroid because of concerns of negative side effects from the steroids as well as the possibility that [A.M.P.] might be allergic to the steroid creams. Mother finally relented and the eczema has dramatically improved on her body and extremities and slightly on her face.

There are concerns with the fact that [M]other keeps changing [A.M.P.'s] primary pediatrician. [A.M.P.] is 10 months old and has had [four] pediatricians. The concern is continuity in treatment is important for a[n individual] with [A.M.P.'s] medical needs. Another concern is that [M]other may be doctor shopping to get the answers that she wants or to find a doctor who will agree with her. However, no doctor has provided a definitive answer as to why [A.M.P.] continues to lose weight, why [she] has an oral aversion[,] and why her eczema is so severe. It is just as likely that [M]other is changing doctors to get answers to these questions.

[A.M.P.] is unimmunized. The lack of immunizations would be more harmful to a[n individual] with [A.M.P.'s] medical conditions. As [of] September [29, 2016, A.M.P.] weighed 13 pounds, 11 ounces, which means that she has lost nearly 1 pound, since she was discharged from the Children's Institute. Continued malnutrition can affect brain and body development. Right now, [A.M.P.] seems to be developmentally on target. She is sitting up, she is making eye contact, she is speaking a few words, she is babbling, [she is] smiling, etc.

Mother is working with early intervention services, which she says are beneficial. Mother is making attempts to feed [A.M.P.]. According to [M]other, [A.M.P.] still rejects the bottle and food. The current [pediatrician] is Dr. Catherine Udekwu. She is not recommending that [A.M.P.] be hospitalized at this time, because despite the weight loss, [A.M.P.] seems to be developmentally on target. She will do regular weight checks to

monitor the situation. She will also encourage [M]other to have [A.M.P.] immunized.

Trial Court Order, 9/30/16, at 1-2 (certain paragraph breaks, paragraph numbers, and quotation marks omitted).

In July 2016, CYF filed a petition for dependency. A hearing was held in September 2016, following which, the court dismissed CYF's dependency petition. This timely appeal followed, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court issued a responsive opinion.

Appellant raises the following issues for review:

A. Whether the [t]rial [c]ourt erred as a matter of law in dismissing Allegheny County Office of Children, Youth and Families' dependency petition pursuant to Juvenile Act, 42 Pa.C.S. §6302(1), by applying the incorrect legal standard after the agency proved by clear and convincing evidence that A.M.P. was without proper parental care or control, or care or control necessary for her physical health?

B. Whether the [t]rial [c]ourt abused its discretion in dismissing Allegheny County Office of Children, Youth and Families' dependency petition pursuant to the Juvenile Act 42 Pa.C.S. §6302(1), after the agency proved by clear and convincing evidence that A.M.P. was without proper care or control, or care or control necessary for her physical health?

Appellant's Brief at 4.

Appellant first asserts that the trial court applied the incorrect standard of review. We are constrained to find this issue waived as Appellant failed to raise it in their 1925(b) statement. *See Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998)). ("[I]n order to preserve their

claims for appellate review, [a]ppellants must comply whenever the trial court orders them to file a Statement of Maters Complained of on Appeal pursuant to Rule 1925. Any issues not raised in a Pa.R.A.P.(b) statement will be deemed waived.")

Next, Appellant challenges the trial court's dismissal of CYF's dependency petition. According to Appellant, the court abused its discretion by disregarding evidence that parents' actions put A.M.P.'s health, safety, and welfare at risk. Appellant's Brief at 22-23.

Our Supreme Court set forth our standard of review for dependency cases as follows:

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re M.B.*, 101 A3d 124, 126-127 (Pa. Super. 2014).

Section 6302 of the Juvenile Act defines a "dependent child" as a child who:

> is without proper parental care or control, subsistence, education as required by law or care or control necessary for his physical mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk[.]

- 4 -

42 Pa.C.S.A. § 6302(1).

A child will only be declared dependent when he or she is presently without proper parental care and when such care is not immediately available. *In re A.B.*, 63 A.3d 345, 349 (Pa. Super. 2013); 42 Pa.C.S. §§ 6301, 6302. Furthermore, "[t]his Court has defined 'proper parental care' as that care which (1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child." *In re A.B*, 63 A.3d at 349 (citation omitted).

It is evident from the record that the parents are willing to provide proper care for their child. Mother was active in A.M.P.'s treatment at Children's Hospital and followed her doctor's recommendations. Notes of Testimony (N.T.), 9/30/16 at 45-46. Mother complied with treatment and recommendations at the Children's Institute. *Id.* at 5. Furthermore, Mother expressed a willingness to hospitalize A.M.P. should it become medically necessary.

Since A.M.P.'s discharge from the hospital, parents continue to provide proper care. A.M.P. is currently meeting all of her developmental milestones. *Id.* at 110-111, 176-177. A.M.P. receives physical therapy, occupational therapy, and visits a nutritionist. *Id.* at 148-149. She is also seen regularly by a gastroenterologist, dermatologist, and an allergist, and has an active plan with her primary care physician. *Id.* at 45, 108-109, 110. It is unclear what additional services or interventions Mother could provide. While it is true that the child has lost weight since her hospital

discharge, despite these treatments, there is not clear evidence that parents' actions have contributed to or caused this weight loss.

Finally, while it is concerning that A.M.P. does not have all of her immunizations, we are unaware of a relevant, legal obligation with which parents currently must conform. *Cf.* 28 Pa. Code § 23 (requiring all public, private, parochial, or nonpublic *school children* to receive immunizations prior to school attendance, and providing two exemptions to the immunization requirement). Furthermore, Mother testified that she is not opposed to the child receiving her immunizations, but she wishes first to determine the underlying cause of A.M.P.'s medical issues. N.T. at 124.

Based on this evidence, we conclude that the court's findings are supported by the record, and we agree that CYF failed to establish by clear and convincing evidence that A.M.P. should be declared dependent. Accordingly, we discern no abuse of the court's discretion.

Order affirmed.

Judge Solano joins the memorandum and files a Concurring Statement.

Judge Olson files a Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>7/11/2017</u>