J-S56001-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: S.S., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| APPEAL OF: M.J., LEGAL GUARDIAN | No. 3002 EDA 2016 |

Appeal from the Order Entered September 1, 2016
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-DP-0001823-2016
FID: 51-FN-001814-2016

BEFORE: BOWES, J., STABILE, J., AND PLATT,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED OCTOBER 18, 2017**

M.J. ("Grandmother") appeals the juvenile court order adjudicating her grandson and ward, S.S., dependent pursuant to two separate facets of the statutory definition of "Dependent child" that relates to children who (1) lack proper parental care and control and/or (2) are habitually truant from school without justification. We reverse.

The certified record lacks any evidentiary foundation. For the ease of our disposition, we reiterate the juvenile court's factual summary as derived from the dependency petition filed by the Philadelphia Department of Human Services ("DHS"):

> On May 12, 2016, a truancy hearing was held for S.S. before [Juvenile] Master [Ruth] Pearson pursuant to a truancy petition filed by the School District of Philadelphia. Master Pearson

_____
* Retired Senior Judge specially assigned to the Superior Court.

ordered that S.S. attend school day with no lateness, cutting or suspensions. Master Ruth Pearson further ordered that absences may only be excused with a physician's note. . . . The Court ordered the Department of Human Services (DHS) [to] file a dependen[cy] petition based on excessive truancy for S.S. The court noted S.S. resided with his maternal grandmother and maternal aunt.

Despite being mandatory school age, the Petition reported and alleged S.S. was excessively and consistently truant. S.S. had 41 unexcused absences for the 2015-2016 school year and 38 unexcused absences for the 2014-2015 school year. S.S. had 11 unexcused absences from March 7, 2016 to May 12, 2016.

Trial Court Opinion, 5/12/17, at 1.

DHS complied with Master Pearson's directive and filed a petition for dependency. Significantly, the agency did not seek to remove S.S. from Grandmother's home. Instead, it recommended that he be permitted to remain with his parents, guardian, or custodian, *i.e.*, Grandmother, with the agency's continuing supervision.

At the outset of the ensuing juvenile court hearing, the trial court summoned counsel to sidebar for a discussion that was not transcribed. N.T., 9/1/17, at 1. When the dependency proceedings reconvened, the juvenile court immediately discussed the allegations set forth in DHS's petition as if it had adopted those facts as its own, summarized that information, and announced its intent to adjudicate S.S. dependent and remove him from Grandmother's care. In pertinent part, the court announced:

We're back on the record. So I'm going to re-work this . . . Let me say this, this case is before me because of a truancy matter that was heard by [M]aster Ruth Pearson on May 12. The reality of it is, this young man is excessively truant.

Now, in the petition it says that [S.S.] had 41 un-excused absences for 2015[-]2016. I hear it's closer to 79. Be that as it may, not on my watch. He's to be placed today out of the home. That's very black and white for me. . . . So let me say this, because I am adjudicating him dependent with a full commitment to the department today, it's not that I think that [S.S.] is necessarily doing it, it might be circumstances within the home, but whatever it is, he is mandated to go to school, and he hasn't been. So, I'm going to put him in a situation where he's going to go to school.

*Id*. at 2.

Thereafter, the following exchange occurred between Grandmother's counsel and the trial court:

[Counsel]: I know we had a sidebar, is there any evidence you want me to put on the record, your Honor[?]

The Court: [U]nless you have any documentation – I will accept any documentation saying that he wasn't excessively truant, so, if you can explain away where 79 – 71 absences for the school year, I'll absolutely hear that. So, I need documentation because I just don't want testimony. I want documentation.

[Counsel]: I have no documentation.

The Court: Okay, so as far as I'm concerned there's no explanation for it.

*Id*. There was no further discussion regarding the sidebar or the dearth of evidence introduced in favor of DHS's dependency petition. The juvenile court placed S.S. in foster care, and directed DHS to explore admitting him

- 3 -

in George Junior Republic or ChildFirst Services, two residential juvenile facilities. The goal was reunification. DHS objected to S.S.'s placement.[1]

*Id*. at 3.

Grandmother filed a timely appeal from the order adjudicating S.S. dependent, and she complied with Pa.R.A.P. 1925(a)(2)(i) by concurrently filing a concise statement of errors complained of on appeal. She presents two questions for our review:

> A. Whether the trial court abused its discretion when it adjudicated the child dependent without clear and convincing evidence because no evidence was taken on the record to support such a finding?

> B. Whether the trial court abused its discretion when it alluded to the fact that it was informed of a certain amount of absences for the child, again no testimony was taken on the record. The court must have had predisposed information that was not provided to counsel nor testified to in open court?

Grandmother's brief at 5.[2] We address the issues collectively.

The following principles are pertinent. In *In re A.B.*, 63 A.3d 345, 349 (Pa.Super. 2013) (quoting *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010)), we explained,

_____

[1] As of the March 2, 2017, permanency review hearing, the most recent juvenile proceeding in the certified record, S.S. remained in kinship foster care with his paternal great aunt, and he exercised liberal unsupervised visitations with his family.

[2] DHS declined to file a brief.

Our Supreme Court set forth our standard of review for dependency cases as follows.

[T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re A.B.*, *supra*, at 349.

Dependency hearings are governed by 23 Pa.C.S. § 6341(a) and (c). Pursuant to those provisions, the trial court is required to consider the evidence adduced at the dependency hearing and determine by clear and convincing evidence whether the child meets the definition of a dependent child under § 6302. *See* § 6341(a) ("After hearing the evidence on the petition the court shall make and file its findings as to whether the child is a dependent child."); *see also* § 6341(c) (requiring court to find child dependent from clear and convincing evidence). Thus, based upon the averments alleged in the dependency petition, DHS was required to prove by clear and convincing evidence that S.S. was "subject to compulsory school attendance [and] is habitually and without justification truant from school[.]" 42 Pa.C.S. § 6302. We have defined clear and convincing evidence as "testimony that is 'so clear, direct, weighty, and convincing as to enable the trier of facts to come to a clear conviction, without hesitancy, of the truth of

the precise facts in issue.'" **In re A.B.**, **supra** at 349 (*quoting* **In re C.R.S.**, 696 A.2d 840, 843 (Pa.Super. 1997)).

Instantly, the juvenile court characterized the off-the-record discussion with counsel at sidebar as a stipulation to the facts in DHS's petition, and it determined that the agency's allegations provided clear and convincing evidence that S.S. was excessively truant. Thus, it determined that it was contrary to the child's safety and welfare to remain in Grandmother's care.

Grandmother assails the juvenile court's characterization of the sidebar discussion, and she contests the court's statement that the parties stipulated to the facts asserted in the petition. Her position accurately highlights the fact that the putative stipulation is not reflected in the record, and stresses that DHS neglected to introduce any evidence to sustain its burden of proof that S.S. is a dependent child. For the reasons explained, *infra*, we agree, and we find that the juvenile court erred in adjudicating S.S. dependent without any record evidence to support the conclusion that DHS sustained its burden of proof.

The juvenile court and Grandmother have divergent perspectives of the sidebar discussion, and while DHS objected to placement, it declined to file a brief taking any position in this appeal. Although we would look to the certified record to resolve the apparent dichotomy, the record is silent as to any agreement in the case at bar. That silence is deafening.

Stated plainly, the certified record will not sustain the trial court's assertion that the parties stipulated to either the accuracy of the facts as alleged in the petition or even agreed that DHS would present a witness to testify consistent with those allegations. The conference at sidebar is not part of the certified record, and we cannot justifiably rely upon the juvenile court's recollection of the discussion in rendering our decision without the purported stipulation or other clear and convincing evidence presented at a hearing. *See New London Oil Co., Inc., v. Ziegler*, 485 A.2d 1131, 1133 (Pa.Super. 1984) (refusing to consider alleged statements defining scope of stipulation where those statements occurred off-the-record). In sum, the allegations in DHS's petition cannot be deemed facts unless Grandmother stipulated to their veracity or DHS presented credible testimony during a hearing. Neither occurred herein.

Moreover, the juvenile court not only failed to outline the purported stipulation on the record, it neglected to mention that the parties had entered any agreement as to the facts. We note that Grandmother carried no burden of proof during the proceeding and she was not obligated to present any evidence or complain about the state of the record. It was up to DHS to satisfy the burden of proof and it was the juvenile court's obligation to ensure that the evidence actually introduced on the record supported its adjudication of delinquency.

Indeed, not only is the record lacking as to any specific agreement about the veracity of the allegations in the petition, the trial court's reaction to Grandmother's inquiry concerning whether to present her own evidence militates against finding that the agreement was implicit. It is axiomatic that, if Grandmother had agreed to the facts asserted in the petition, she would not have sought to introduce contrary evidence. To be sure, the mere fact that the juvenile court invited Grandmother to submit "documentation saying that he wasn't excessively truant," belies the trial court's subsequent assertion that the case was submitted on stipulated facts.

Likewise, to the extent that the parties could have simply agreed to the content of a DHS witness's testimony if called to the stand, the certified record does not identify the putative witness or outline his or her testimony. Again, the only "evidence" in the record currently before this Court is the juvenile court's inexplicable but obvious wholesale acceptance of the truancy allegations that DHS had leveled in its petition.[3]

Our review of the certified record reveals no agreement whereby Grandmother stipulated to the facts in DHS's dependency petition. If there

_____

[3] We observe that, while the trial court found that S.S. missed "closer to 79" days of school during the 2015-2016 academic year, the petition which ostensibly formed the bases of the purported stipulation averred that S.S. missed no more than fifty-two days of school. N.T., 9/1/17, at 2. Hence, assuming that the parties agreed to submit the case on stipulated facts, and there is no evidence to suggest that they did, the record still would not sustain that aspect of the juvenile court's determination.

was an agreement among the parties, it was not on the record, and does not exist for the purpose of our review.

Since no evidence exists in the certified record to support the trial court's adjudication of dependency, we reverse the adjudication and disposition entered on September 1, 2016. DHS is to maintain supervision until discharged by the juvenile court. If DHS believes that S.S. meets the statutory definition of a dependent child, it can petition the juvenile court to take appropriate measures to ensure the protection of his physical, mental, and moral welfare.

Order reversed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/18/17