J-S67014-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.D., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: J.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1375 MDA 2019 |

Appeal from the Dispositional Order Filed July 16, 2019
In the Court of Common Pleas of Adams County Juvenile Division at
No(s):  CP-01-DP-0000026-2019

BEFORE:   OLSON, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OLSON, J.:                    **FILED JANUARY 07, 2020**

Appellant, J.S. ("Mother"), appeals from the dispositional order filed on July 16, 2019, adjudicating dependent her male child, J.D. (born in June of 2018) (the "Child").  We affirm.

The trial court summarized the facts of this case as follows:

[O]n May 3, 2019, the Child, an eleven-month-old infant at the time, was left unsupervised in the bathtub with two other children who were five and seven years old respectively.  At the time, the Child was in the care of R.D., his natural father ("Father"),[1] at a residence shared [periodically with Mother].  Apparently, Father left the bathroom while all three children were in the bathtub with the water running.  The Child was under the faucet when one of the other children turned off the cold water.  Father heard the Child scream and estimated it took him approximately 30 second[s] to get to the bathtub.  He claimed to have observed a red mark on the Child and described the Child to be inconsolably

---

[*] Former Justice specially assigned to the Superior Court.

[1] Father is not a party to this appeal.

crying for approximately five minutes after the incident. Mother was not home at the time. Both parents, however, were aware that the water heater was set to "very hot" which is approximately 160 degrees. Both parents also acknowledged that the faucet handles were misidentified with the "H" on the cold handle and "C" on the hot handle.

Father provided Adams County Children and Youth Services ("Agency") with conflicting stories as to when he recognized the Child was seriously injured. He claimed he saw blisters on the Child while the Child was crawling on the floor. He clarified the Child had a wet shirt and when he checked the source of the wetness, he noticed the blisters. Later, however, he changed his story to indicate that he first observed blisters the next day while [he, the Child, and Mother were] at a car dealership. Mother indicated to the Agency caseworker that she was unaware of the injuries until noticing the same at the car dealership. She claimed to have first observed the Child's shirt to be wet in the back which caused further investigation during which she observed the Child's back to be blistering. Mother claims Father never told her about the incident prior to her observations at the dealership. She noted the Child was asleep when she returned from work on May 3, 2019. She acknowledged she dressed the Child, including changing the Child's diaper, on the morning of May 4, 2019 but did not notice anything unusual. She described the Child as generally being in good spirits.

After the observations at the dealership, Mother took the Child to Urgent Care, [which] directed her to go to the Hanover Hospital. When seen at Hanover Hospital, the Child was transferred to Lehigh Valley Children's Hospital. At Lehigh Valley, he was diagnosed with [second-degree burns to] five percent [of his] total body surface area[, specifically located on] his posterior torso. The Child's upper torso had first[-]degree burns. The Child was admitted to the hospital for approximately two days for burn surgery, treatment, and recovery.

At [the dependency] hearing [on July 15, 2019], the Agency called Dr. Ruchita Doshi, the pediatric hospitalist and member of the child protection team at Lehigh Valley Hospital. The parties stipulated to her qualifications. Dr. Doshi testified that during the 18 to 20 hours the Child went without treatment, the extent of Child's injuries worsened. She described the burns as being very painful and, due to the nature of the injury, it was likely the Child was obviously suffering, was inconsolable, and would have been

noticeably fussy throughout the day. Her notes reflected that Mother confirmed the Child's fussiness on the day following the incident. In her opinion, medical care should have been immediately sought for the Child. Dr. Doshi concluded that diaper changes and outfit changes would have revealed the injury and, in her opinion, it is medical neglect to not note such a significant burn. In addition to Dr. Doshi's testimony, the Agency presented pre-surgery photographs of the Child's injuries on the day he was admitted to the hospital.

Trial Court Opinion, 9/10/2019, at 1-4. On July 16, 2019, the trial court entered an order adjudicating the Child dependent, citing serious physical neglect pursuant to 23 Pa.C.S.A. § 6303. This timely appeal resulted.[2]

On appeal, Mother presents the following issues for our review:

I.      Did the [t]rial [c]ourt abuse its discretion and/or make an error of law in finding that [the Agency] proved by clear and convincing evidence that the [Child], is dependent when there was competent evidence establishing that: Mother was not home at the time that the [C]hild sustained the injury; the [C]hild did not present with symptoms of distress/pain; Mother sought medical treatment immediately upon learning of the injury; and no other concerns for the [C]hild's care and well-being were raised or identified.

II.     Did the [t]rial [c]ourt abuse its discretion and/or make an error of law in finding that [the Agency] proved by clear and convincing evidence that the [Child], is a victim of serious physical neglect for lack of medical care/treatment by his Mother, pursuant to 23 Pa.C.S.A. [§] 6303 when there was competent evidence establishing that: Mother was not home at the time the [C]hild sustained the injury; the [C]hild did not present with symptoms of distress/pain; [] Mother sought medical treatment immediately upon

_____

[2] Mother filed a notice of appeal on August 14, 2019. She filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) on August 15, 2019. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on September 10, 2019.

> learning of the injury; and no other concerns for the [C]hild's care and well-being were raised.

Mother's Brief at 19.

Mother's issues are inter-related, so we will examine them together.[3] Mother first claims that the Agency failed to meet its burden of proving by clear and convincing evidence that Mother failed to secure timely medical care for the Child, amounting to serious physical neglect. *Id.* at 21-22. She claims the trial court's decision "was based primarily on speculation, innuendo, and suspicion as to what Mother should have seen, or the timeline in which she should have acted on the [C]hild's behalf." *Id.* at 21. Additionally, Mother posits that the trial court's statement that hospital photographs taken immediately after the Child's admission, showed that Child's "left butt cheek" was "burning red" was contrary to the evidence presented. *Id.* at 22-23. More specifically, Mother suggests that the hospital photographs and testimony from Dr. Doshi indicated that the Child's injuries were limited to his "posterior torso, which is his back." *Id.* She maintains that the trial court erred by focusing "on the fact that Mother did not see or observe the injury when changing the [C]hild's diaper and dressing him for the day[,]" because the Child's injuries were higher up on his body and outside of her view. *Id.* at 22. Thus, Mother contends that "[t]here is reliable evidence that [] Mother was completely ignorant to the incident in the bathtub until the following afternoon when she first saw [a] blister and confronted Father." *Id.* at 17.

---

[3] In fact, Mother does not separate the issues into different sections in her appellate brief and, instead, addresses both issues together.

Finally, Mother argues that the trial court "completely disregarded the credible testimony of Lisa Watson, the Hanover Honda saleswoman, an objective third[-]party with no ties to Mother or Father" who described the Child as "pleasant, active, eating, and smiling" just prior to his admission to the hospital. *Id.* at 24-25.

Our standard of review for dependency cases as follows.

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re A.B.*, 63 A.3d 345, 349 (Pa. Super. 2013) (citation omitted). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *Interest of T.G.*, 208 A.3d 487, 490 (Pa. Super. 2019) (citation omitted). "Even if an appellate court would have made a different conclusion based on the cold record, [it is not] in a position to reweigh the evidence and the credibility determinations of the trial court." *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). Instead, we view the evidence in the light most favorable to the Agency as the verdict winner. *Matter of B.R.*, 596 A.2d 1120, 1123 (Pa. Super. 1991) (citation omitted).

To adjudicate a child dependent, a trial court must determine, by clear and convincing evidence,[4] that the child:

> is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk.

42 Pa.C.S.A. § 6302. "The failure to provide a child with adequate essentials of life, including food, shelter or medical care" constitutes "serious physical neglect." 23 Pa.C.S.A. § 6303.

Here, the trial court determined:

> […] Dr. Doshi credibly testified that injuries of the extent suffered by the Child would be extremely painful and undoubtedly cause the Child to be inconsolable and fussy. Dr. Doshi further indicated that such conduct by an 11-month-old would reasonably alert a guardian to uncover the cause. Mother's testimony to the contrary was simply not credible in light of this testimony and every day human experience. Nevertheless, even absent Dr. Doshi's opinion, there is objective evidence in the record which supports the [trial c]ourt's decision.

> Mother testified that she changed the Child's diaper on the morning after the incident. She claimed [not] to have [] observed anything unusual even though she was paying particular attention to the Child's cleanliness as he previously suffered from a yeast infection. She further acknowledged changing his diaper later in the day without any unusual observations. The photographic evidence, however, completely contradicts Mother's claim. The photos show significant burns on the Child's posterior which would

---

[4] "Clear and convincing" evidence has been defined as testimony that is "so clear, direct, weighty, and convincing as to enable the trier of facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *In re A.B.*, 63 A.3d at 349 (citation omitted).

have been readily observed by anyone who was changing the Child's diaper. Moreover, it is inconceivable that the mere positioning of the Child for cleaning and replacing the diaper would not [] reveal visual signs of significant injury [nor disclose] obvious discomfort for the Child. Mother's argument to the contrary is simply incredible.

Trial Court Opinion, 9/10/2019, at 4-5.

Moreover, the trial court noted that Mother minimized the extent of the Child's injuries when she testified that she did not think much of the injury, it appeared to be "just a blister," and that a medicated cream would suffice to treat the affected area. *Id.* at 5 n.3. Mother also stated that she believed that Father's actions following the incident were appropriate. *Id.* The trial court found these contentions incredible in light of Dr. Doshi's testimony that the Child suffered from significant burns that required surgery, pain medication, and an extended hospital stay. *Id.*

Upon review of the certified record, including the photographs taken at the hospital, we discern no abuse of discretion or error of law in finding the Child dependent based upon a failure to secure prompt medical care. Essentially, Mother asks us to view the evidence in the light most favorable to her and to credit her own testimony and the testimony of the witnesses she presented, which we cannot do. Mother claims that she first noticed the Child's burn injuries while shopping at a car dealership many hours after the incident. She claims that the evidence she presented showed that the Child was not displaying signs of distress. The trial court, however, was free to reject this testimony. Moreover, the Agency presented medical testimony that

explained that the type of injuries the Child sustained were extremely painful and a non-verbal child would express pain by crying or acting fussy to alert a caregiver of its condition. The trial court was also presented with the hospital photographs showing the Child's pervasive injuries, which covered approximately 5% of his body area. These photographs were objectively verifiable facts that refuted Mother's version of events. The injuries were instantly recognizable and significant. Essentially, the trial court determined that Mother knew about the burns, but minimized Father's role in the incident and the effect the injuries had on the Child. The evidence and testimony also led the trial court to conclude that Mother only went to the hospital when the injuries worsened, blistering from first-degree burns to second-degree burns. As a result, the trial court determined that Child was without essential medical care which endangered his health, safety and welfare. Accordingly, the Child was deemed to be at risk and properly declared dependent. Based upon our standard of review and the record before us, we discern no abuse of discretion or error of law and Mother's appellate claims fail.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/07/2020