J-S38035-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: C.H.., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.H. | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 766 WDA 2021 |

Appeal from the Order Dated June 16, 2021
In the Court of Common Pleas of Allegheny County Juvenile Division at
No(s): CP-02-DP-0001172-2016

| | | |
|---|---|---|
| IN THE INTEREST OF: M.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.H. | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 767 WDA 2021 |

Appeal from the Order Entered June 16, 2021
In the Court of Common Pleas of Allegheny County Juvenile Division at
No(s): CP-02-DP-0001173-2016

BEFORE:   BENDER, P.J.E., DUBOW, J., and COLINS, J.*

MEMORANDUM BY COLINS, J.:                    **FILED: MARCH 24, 2022**

In this consolidated appeal, two minor children, through their guardian *ad litem* ("GAL"), appeal from the orders entered on June 16, 2021, in the Court of Common Pleas of Allegheny County, Family Division, terminating court supervision of their dependency matters.  The subject children are C.H.,

_____

* Retired Senior Judge assigned to the Superior Court.

a male born on March 18, 2013 and M.H., a female born on December 13, 2005 ("Children").[1]  After careful review, we affirm.

The subject orders resulted from the November 4, 2016 petitions of the Allegheny County Office of Children, Youth and Families ("CYF") for a dependency hearing for Children, who were alleged to be without proper parental care or control, subsistence, or education.[2]  November 4, 2016 Dependency Petitions.  The February 22, 2017 Order of Adjudication and

---

[1] According to the Dependency Petitions, M.H. has Spina Bifida, with complex medical needs and a dependency upon others for all aspects of her care.  She is non-verbal and non-ambulatory, and developmentally delayed.  C.H. has been diagnosed with developmental delays.  M.H. and C.H. also have a sibling, T.H., who is the oldest child, and she has a mild form of Cerebral Palsy. 11/4/16 Dependency Petitions. The Allegheny County Office of Children, Youth and Families initially filed a petition for dependency for T.H., which was dismissed at the adjudication hearing.

[2] The Juvenile Act, 42 Pa.C.S. Sections 6301-6375, permits a court to adjudicate a child dependent if it finds that he or she meets the requirements of one of ten listed definitions.  The Act defines "dependent child" as follows, in relevant part:

"**Dependent child.**" A child who:

(1)    is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals.  A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk[.]

42 Pa.C.S. Section 6202(1).  "Proper parental care" is care "which (1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child."  *In re A.B.*, 63 A.3d 345, 349 (Pa. Super. 2013)(citation omitted).

Disposition ("Adjudication Order") for dependency for C.H. indicated, *inter alia*, that C.H. is safe and should remain in the home with his parents, that parents had stipulated to needing help with C.H.'s medical needs, that CYF shall place 'Home Builders' in the home, that parents shall comply with CYF and all services, that C.H. shall receive early intervention services, and that a Court Appointed Special Advocate ("CASA") be appointed to the case. 2/22/17 Order for C.H. at 1-2. The Adjudication Order for dependency for M.H. included the same stipulation and mandates as those for C.H., and in addition, required that M.H. be enrolled in school and that an Educational Liaison be appointed to the case. 2/22/17 Order for M.H. at 1-2.

At the In-Home Review/Permanency Review hearing held on June 16, 2021, David Sprague, the CYF Casework Supervisor for Children, testified that they were doing well in parents' care, N.T. at 5; nevertheless, Sprague reported that for approximately the past 6 months, or over two reporting periods, C.H. had not been logging in to the elementary school he was then attending via computer, mostly due to technical difficulties with the school-supplied computer equipment; even following rectification of these difficulties on April 28th, as of May 11, 2021, C.H. had still not logged in to school, and it was noted that C.H. receives both occupational and speech therapy through the school. *Id*. at 5-6. Sprague testified that M.H., a ninth-grader who attends a different school, had numerous absences, with 10 of 11 excused

absences due to her hospitalizations,[3] and 19 unexcused absences; M.H. also receives occupational and speech therapy through her school. *Id*. at 7. Regarding private duty nursing services in the home, Sprague testified that "Mother has stated she does not want to work with any private duty nursing service in the home." *Id*. at 11. In response to an inquiry as to whether it was still medically recommended that M.H. have 40 hours of private duty nursing per week, Sprague responded that it was. *Id*. at 23. He further testified that T.H. ("Mother") has failed to sign CYF's release form, requested from her for information regarding her mental health treatment, and there are no in-home services currently working with the family. *Id*. at 11.

It was noted that at the previous hearing there was a discussion about engaging the provider Home Builders, and when asked whether that had occurred, Sprague responded that the provider was engaged, but had since been closed out, in March, 2021. *Id*. at 12. In terms of care coordination, Sprague testified that C.H. has a care coordinator, but he did not know the coordinator's name, and that he could not answer the question as to M.H. *Id*. at 12. He testified that he was unaware of whether the parents had followed up on 'Applied Behavioral Analysis' services discussed at a previous hearing, and he did not know whether they had received assistance in obtaining soft cuffs for M.H.'s new bed, an item also discussed at the previous hearing. *Id*. at 21. Sprague stated that the CYF was requesting that the parents meet with

---

[3] M.H. was hospitalized from April 19-May 5, 2021, and again from May 14-17, 2021. Tr. Ct. Op.` at 7.

them on a regular basis to make sure Children are attending all of their doctors' appointments and attending school, "the kind of things that we've been asking for a while." *Id*. at 13. He testified:

> We're asking that [Children] remain in their current — remain at home with the parents, that the — that they participate in all recommended services, including the ICARE team, that Mom sign the release for her mental health treatment, and a regular three-month review.

*Id*.

The trial court asked Sprague whether CYF was doing anything at present for the family that they cannot continue to do if the case is closed, and Sprague responded that there was not, but stated that "the issue has been that a lot of times the family has not responded without CYF and the [trial court] pressuring them to do so." *Id*. at 30. Children's GAL testified that she is in agreement with CYF's recommendations, and she continues to be concerned that there is a system of providers at the parents' disposal who they continue to turn away, and therefore Childrens' needs are not being met. *Id.* at 68. Children's GAL testified that with respect to schooling, both Children are receiving vital services through their education, and they do not receive these services if they do not attend school. *Id*. at 69. She noted that both parents had testified that they believe C.H. is regressing at school, and they are interested in procuring permission for him to attend the school where M.H. is enrolled. *Id*. She concluded her testimony by stating that she believes that other options should be considered with respect to making sure that

M.H.'s medical and educational needs can be met where Mother is overwhelmed and unable to do so. *Id*.

The trial court stated at the hearing:

[T]his matter came before the Court February 27, 2017, with the stipulation from [Children's parents] of there being severe medical needs and them being unable to address them without Court intervention. Today – I have been for the last several hearings – hearing something different. There have been educational needs that are somewhat addressed. Private duty nursing has been declined. Mother still refuses to sign releases for mental health investigation to find out what's going on there to determine if there's other assistance being needed.

So I'm sort of trying to figure out exactly what [CYF] is doing for this family, and this family picking and choosing what they want. They're asking me for CASA to vacate at this particular time. So I'm just – I just don't see what [CYF] is doing. I asked the caseworker, is there something that CYF can do that can't be done without CYF's involvement. Apparently, there isn't anything.

*Id*. at 69-70. The trial court then asked both Mother's counsel and counsel for V.H. ("Father") what it is that they need or want that they are not receiving. Each responded that they felt that care coordination could go on without involvement from CYF. *Id*. at 71. Mother's counsel stated that she believed that Kids Voice may still be able to assist with education issues if the case was closed. *Id.* Counsel for CYF testified that the agency still has concerns because much of parents' compliance has been because of Court oversight; she stated that, once removed, "the whole thing's going to fall apart again." *Id*. at 72. Children's GAL concurred with the representative from CYF, reiterating that Children "have been adversely affected by the parents' lack of reasonable and practical decision making and that closing this case

would be extremely detrimental and that the conditions which brought dependency have not been resolved, and there is still clearly a need for court involvement." *Id*. at 73.

Mother testified that she has been able to provide all of Children's medical needs. N.T. at 39. She stated that she "wouldn't mind having a care coordinator to manage [doctors'] appointments," but that because she hadn't been hearing from the care coordinator, she had been "staying on top of it" herself. *Id*. She testified that a 'PPN' nurse from Pittsburgh Children's Hospital still comes to the house every week and has been doing a good job, drawing M.H.'s blood, changing her dressing, and taking her heart rate. *Id*. at 40. She denied that the family had officially ended a relationship with an individual from Home Builders. *Id*. at 41. She indicated that while she has been, for the most part, the parent responsible for doctors' appointments and schedules for M.H., her husband has assumed responsibility for handling C.H.'s appointments. *Id*. at 42.

Mother asserted that M.H. had not been absent without an excuse for the number of times stated during testimony, that she works closely with M.H.'s hospital team to understand all of M.H.'s medical issues, and that among the parents in M.H.'s school program, she is one of the strongest parent participants. *Id*. She named the care coordinator with whom she indicated has been working for approximately one year. *Id*. at 48. Mother noted that her oldest child, T.H., had just graduated from high school with straight A's, and that they were hopeful that she would continue on to college.

*Id*. Mother clearly stated that she was benefited by the participation of a care coordinator to help with scheduling appointments for both M.H. and C.H., and that she hoped such services could continue through Children's Hospital if the CYF case was closed. *Id*. at 50-51.

Father testified regarding C.H.'s educational needs and his belief that prior to the onset of technical difficulties with the home computer, for which he blamed C.H.'s school, C.H.'s attendance at school had been "stupendous." *Id*. at 55. Father stated that C.H. is not learning as he should at his present school, and needs a school that can provide a more generalized classroom setting with more advanced peers. *Id*. at 62.

Following the hearing, the trial court entered orders terminating the dependency and court supervision of C.H. and M.H. Children, through their GAL, then filed the instant timely appeal.

Before this Court, Appellants raise the follow issues for review:

A. Did the Trial Court commit an error of law when it relied upon the "clear and convincing evidence" standard at a permanency review hearing?

B. Did the trial court commit an error of law and abuse its discretion by ordering the Termination of Court Supervision and finding that the services of the agency were no longer necessary and that the circumstances which necessitated the dependency adjudication had been alleviated.

Appellant's Brief at 4.

We review the orders terminating court supervision according to the following standard:

> [The standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010).

Appellants first assert that the trial court applied the incorrect standard of review. We are constrained to find this issue waived as Appellants failed to raise this argument in their Pa.R.A.P. 1925(b) statements. *See Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998). ("[I]n order to preserve their claim for appellate review, [a]ppellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to Rule 1925. Any issues not raised in a 1925(b) statement will be deemed waived.")

Next, Appellants challenge the trial court's termination of court supervision and finding that CYF's services were no longer necessary and that the circumstances which necessitated a dependency adjudication had been alleviated. Appellants' Brief at 27-28. With regard to the termination of court supervision, the Rules of Juvenile Court Procedure instruct that:

> Any party, or the court on its own motion, may move for the termination of supervision when court ordered services from the county agency are no longer needed and:

> (1) The child has remained with the guardian and the circumstances which necessitated the dependency adjudication have been alleviated;

Pa. R.J.C.P. 1631(A)(1).

At the time Children were adjudicated as dependent, parents stipulated that they needed help with Children's medical needs. Here, the trial court found Mother and Father to be fully compliant and to have resolved the issues the led the Children being adjudicated dependent. Tr. Ct. Op. at 4. The trial court found significant the fact that the CYF Supervisor agreed that C.H. was up to date with all his medical appointments, *id*. at 7, and could not inform the court as to whether specific medical appointments or referrals for M.H. had occurred or whether she in fact had a care coordinator. *Id*. at 8. The trial court stated, "it was abundantly clear that [the CYF Casework Supervisor] did not have all of the necessary documents and/or first-hand knowledge of this family to testify." *Id*. at 10. The trial court found that CYF was not actively involved in assisting the family in meeting their needs and, in fact, the majority of the services that were in place had been set up by the family and hospital service coordinators, outside of CYF. *Id.* at 12-13.

Of Mother's testimony, the trial court noted that "Mother made it very clear that she had been managing both [C]hildren's appointment[s], and ensuring that they had transportation to and from." *Id*. at 11. He reviewed Mother's testimony with regard to educational concerns presented throughout the hearing, citing her statements disputing the number of unexcused absences. *Id*. The trial court summarized Father's testimony, highlighting

Father's statements that he is in constant communication with C.H.'s school, his assertion that he had in fact logged in to school for C.H. twice since the computer problems were corrected and school ended for the year, and his statements as to the inadequacies of C.H.'s current school. *Id*. at 12. The trial court concluded that "[t]here was clear evidence and testimony presented to this Court that both Mother and Father were actively engaged in ensuring both of the Children's educational and medical needs were being met." *Id*. at 12.

When announcing that the Children's dependency was dismissed and closed at the conclusion of the hearing, the trial court stated:

> This Court believes the intent of [the] Juvenile Act is to preserve the family and provide the support necessary for parents to properly care for their children. It is the agency job to coordinate the services and provide supports, when necessary, for the families to thrive independently. The goal of this Court is not to keep families under Court Supervision indefinitely. Especially, when they have shown that the have the ability to meet their children's needs independently from the Court Supervision and CYF assistance. If the children are not dependent, then it is not appropriate for the family to remain under Court Supervision.
>
> Clear and convincing evidence was presented to the Court that Mother and Father had met all the recommendations of the agency regarding the Children's needs for several months.

N.T. at 73.

Five years after the initial adjudication of dependency, it is evident from the record that the parents are capable and willing to provide proper care for M.H. and C.H. and to address their medical and educational needs. Based

on this evidence, we conclude that the trial court's findings are supported by the record, and we cannot find that the trial court abused its discretion in its determination to dismiss the dependency. We must note that at the conclusion of the permanency review hearing, the trial court appeared to acknowledge the possibility that the dependency case not remain closed, when it advised CYF that "the next time this case comes up, we need to have placement options available and ready to go." N.T. at 73. While this language is concerning, we interpret the trial court's comment as an admonishment to CYF for its failure to come before it fully prepared, and not an expression of equivocation. Accordingly, we affirm the Orders terminating court supervision for M.H. and C.H.

Orders affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/24/2022