J-S15004-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: W.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1252 WDA 2020 |

Appeal from the Order Dated November 5, 2020
In the Court of Common Pleas of Blair County Juvenile Division at No(s):
FID: 7-FN-26-2020,
No. CP-7-DP 47-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: H.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1253 WDA 2020 |

Appeal from the Order Dated November 5, 2020
In the Court of Common Pleas of Blair County Juvenile Division at No(s):
CP-7-DP-48-2020

BEFORE:   LAZARUS, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED: JULY 20, 2021**

_____

[*] Retired Senior Judge assigned to the Superior Court.

M.S. (Mother) appeals from the orders,[1] entered in the Court of Common Pleas of Blair County, finding W.S. (born 7/05) and H.S. (born 2/08) dependent, placing legal and physical custody of W.S. and H.S. in Blair County Children, Youth & Families (the Agency), and removing W.S. and H.S. from the home. *See* 42 Pa.C.S. § 6302(a). After our review, we affirm.

This case arose when W.S.'s and H.S.'s older sibling, A.S., disclosed that she had been sexually abused daily by her adoptive father (Father), from 2016 to 2018, beginning when she was thirteen years old. Pursuant to the Agency's safety plan, A.S.,[2] W.S., and H.S. were taken to maternal grandparents' home, where Mother resided.[3] According to the safety plan, all three children were to have no contact with Father.

_____

[1] Mother filed two separate appeals in accordance with the Pennsylvania Supreme Court's decision in *Commonwealth v. Walker*, 185 A.3d 969 (Pa. 2018). *See* Pa.R.A.P. 341(b). In *Walker*, the Court clarified that "the proper practice under Rule 341(a) is to file separate appeals from an order that resolves issues arising on more than one docket. The failure to do so requires the appellate court to quash the appeal." *Id.* at 977. *See also In the Matter of M.P.*, 204 A.3d 976, 981 (Pa. Super. 2019). By order dated January 15, 2021, this Court *sua sponte* consolidated the appeals docketed at 1252 and 1253 WDA 2020. *See* Pa.R.A.P. 513.

[2] A.S. is now over eighteen and is not a subject of this appeal.

[3] Father was arrested and has been charged with over 500 criminal offenses: two (2) counts of involuntary deviate sexual intercourse and ninety-six (96) counts each of unlawful contact with a minor, aggravated indecent assault, child endangerment, and corruption of minors (all felonies). He was also charged with ninety-six (96) counts each of indecent exposure and indecent assault (all misdemeanors). *See* N.T. Adjudicatory Hearing, 10/1/20, at 33.

In June of 2020, the Agency received allegations that H.S. had also been sexually abused by Father. In July of 2020, the Agency was informed of the following concerns:

(1)    Mother was having frequent contact with Father;

(2)    Mother was not allowing A.S. to attend and testify at Father's preliminary hearing, despite A.S.'s desire to do so;

(3)    Mother was telling the Agency A.S. wanted to forgive Father, even though that was not consistent with A.S.'s desire.

***See*** Pa.R.A.P. 1925(a) Opinion, 1/12/21, at 3.

The court held a hearing on July 22, 2020; the parties were unable to reach an agreement with respect to the safety plan, and as a result, the safety plan was rescinded. The Agency sought emergency relief and the Honorable Timothy M. Sullivan granted emergency protective custody of the three children to maternal grandparents. ***See*** Order, 7/23/20. On July 24, 2020, the Agency filed an application for emergency protective custody and a shelter care hearing, and on July 27, 2020, the Agency filed dependency petitions. The Agency alleged, *inter alia*:

> [Mother] has minimized the effect that the abuse has had on the children, she has not taken any accountability for the abuse and often blames the children, she appears to be more concerned about the loss of income the disruption of her household has caused [than] the welfare of her children, is unwilling to address the growing parent-child conflict in the home, and she continues to make it known to the children that she maintains contact with [F]ather. As a result, the [A]gency believes that [Mother] is neglecting her parental responsibility to protect her children and put their needs above her own.

Dependency Petition, 7/27/20, at 8, ¶ 5(o).

On October 1, 2020, Judge Sullivan held an adjudicatory hearing/dispositional hearing. The Agency presented the testimony of Ashley Noye, a functional family therapist from Evolution Counseling, N.T. Hearing, 10/1/20, at 8-26, and Shannon Tucker, an assessment supervisor at the Agency. *Id.* at 27-54. Mother also testified on her own behalf. *Id.* at 54-74. Based on the testimonial evidence, the trial court set forth the following factual findings in its October 8, 2020 adjudication/disposition order:

On May 16, 2020, a Protection From Abuse (PFA) order was granted for Mother on behalf of A.S. and H.S., against Father, and Father was evicted from the family home. Functional Family Therapy services began on May 28, 2020, the identified client being H.S. On June 5, 2020, caseworker was informed Mother was having daily contact with Father. Mother admitted to this, stating that she was dependent upon Father for financial resources and that she was not employed. On June 16, 2020, the Agency received new allegations that H.S. had been sexually abused by Father as well and that Father has been indicated for indecent exposure. On June 22, 2020, Blair Family Solutions opened family-based counseling services for the family. On June 25, 2020, numerous criminal charges were filed against Father, including: two counts of involuntary deviate sexual intercourse (IDSI)-person less than 16 years of age; 96 counts of indecent assault-person less than 16 years of age; 96 counts of aggravated indecent assault-person less than 16 years of age; 96 counts of endangering welfare of children; 96 counts of corruption of minors-defendant age 18 or above; and 96 counts of unlawful contact with a minor-sexual offenses. Both A.S. and H.S. are identified as victims. According to the testimony of Ashley Noye, Mother was conflicted about the situation involving Father, which caused the children much confusion and conflict. Mother did mention to Ms. Noye that Father would undress in front of the children, that he would not shut the door, and that he had a lot of control within the home. On June 10, 2020, Mother [disclosed to] Ms. Noye that she was worried about Father going to prison and the lack of money for the family. On June 12, 2020, [M]other expressed concern that Father "did do something" to the children, but she would not discuss it in any detail. On July 23, 2020,

> Mother made conflicting comments as to whether the allegations made by A.S. were true; that A.S. "could lie" about the allegations; that Father could have done something but perhaps not the extreme as [A.S.] reported. Ms. Noye also testified that on July 21, 2020, A.S. advised that Mother told her that Father was sexually abused and that she felt that Mother was "pushing her to forgive [ F]ather." Ms. Noye testified that she has an ongoing concern with Mother being able to provide protective capacity. Shannon Tucker, an Agency Supervisor, expressed concerns with Mother's protective capacity and that such concerns were heightened by review of the numerous text messages between Mother and the children. Ms. Tucker reported that in review of those text messages, some revealed that Mother was sharing information received from Father with the children; that she wanted the children to forgive Father; that she was relaying promises Father made, etc.

Order of Adjudication and Disposition, 10/8/20, at 5-6 (unnecessary capitalization omitted).

Following the hearing, the court granted the Agency's petitions. The court found clear and convincing evidence to support the allegations in the dependency petitions and adjudicated each of the three children dependent.

In its disposition, the court granted legal and physical custody of all three children to the Agency. A.S. and H.S. remained in kinship care with maternal grandparents; W.S. was placed in kinship care with his maternal uncle and aunt in Altoona so that he could continue with his schooling and soccer in the Altoona Area School District.

Mother filed a motion for reconsideration, which the court denied on November 5, 2020.[4] On November 16, 2020, Mother appealed from the orders denying reconsideration.[5] On December 22, 2020, this Court issued rule to show cause orders as to why the appeals should not be quashed as orders denying reconsideration are not final or appealable. *See Valentine v. Wroten*, 580 A.2d 757, 758 (Pa. Super. 1990).[6] Mother filed responses and, on January 15, 2021, this Court discharged the rule to show cause orders, finding that the trial court dockets showed that the October 1, 2020 orders of adjudication and disposition did not include Pa.R.A.P. 236(b) notice. *See In re L.M.*, 923 A.2d 505, 509 (Pa. Super. 2007) ("Where there is no indication on the docket that Rule 236(b) notice has been given, then the appeal period has not begun to run. Our Supreme Court has expressly held that this is a bright-line rule, to be interpreted strictly."). We conclude, therefore, that

---

[4] The court also ordered legal counsel be appointed for W.S. and H.S. *See* Pa.R.J.C.P. 1151C, 1154; *see also In re J'K.M.*, 191 A.3d 907 (Pa. Super. 2018).

[5] On November 18, 2020, Mother filed a petition for an emergency hearing; the court held a hearing on December 8, 2020 and entered permanency review orders on December 15, 2020 for each of the children, essentially maintaining the status quo.

[6] Mother had 30 days from the October 1, 2020 order to file her appeals, unless the trial court expressly vacated those orders and granted reconsideration. *See* Pa.R.A.P. 903(a); Pa.R.A.P. 1701(b); *see also Cheathem v. Temple Univ. Hosp.*, 743 A.2d 518, 520 (Pa. Super. 1999) (holding that motion for reconsideration does not toll appeal period unless trial court expressly grants reconsideration within 30 days of appealable order).

Mother's appeals are timely. *See* Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.").[7]

Both Mother and the court have complied with Pa.R.A.P. 1925. With respect to W.S., Mother raises the following issue on appeal: Whether the trial court erred in finding minor child W.S. dependent and in need of placement outside the home? With respect to both W.S. and H.S., Mother raises the following issue on appeal: Whether the trial court erred in ruling that Mother shall have no contact with W.S. or H.S. unless it be through the Agency or through supervised visits for one day, every other week.[8] *See* Appellant's Briefs, at 4.

> When reviewing a dependency case, we accept the trial court's findings of fact and credibility determinations that are supported in the record. However, we are not required to accept the court's inferences or conclusions of law. *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). We review for an abuse of discretion. In *Interest of L.Z.*, 111 A.3d 1164, 1174 ([Pa.] 2015).

*In re N.S.*, 237 A.3d 546, 550 (Pa. Super. 2020). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to

_____

[7] Mother filed additional notices of appeal on each docket on December 22, 2020.

[8] In her Rule 1925(b) statement of errors complained of on appeal, Mother had raised the claim that the trial court erred in finding H.S. dependent and in need of placement outside the home. *See* Rule 1925(b) Statement, 12/22/20, at ¶ 2a. Mother has abandoned that claim in her appellate brief.

make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa. Super. 2003) (citation omitted).

In *In re D.A., A Minor*, 801 A.2d 614 (Pa. Super. 2002) (en banc), we explained:

> If the court finds that the child is dependent, then the court may make an appropriate disposition of the child to protect the child's physical, mental and moral welfare, including allowing the child to remain with the parents subject to supervision, transferring temporary legal custody to a relative or a private or public agency, or transferring custody to the juvenile court of another state. [*See*]  42 Pa.C.S. § 6351(a).

*Id.* at 617 (citation omitted).  *See In re M.L.*, 757 A.2d 849, 850–51 (Pa. 2000).  However, even after a child has been adjudicated dependent, a court may not separate that child from his or her parent unless it finds that the separation is clearly necessary.  *See* 42 Pa.C.S. § 6301(b)(3); *In re G., T.*, 845 A.2d 870 (Pa. Super. 2004).  "`Such necessity is implicated where the welfare of the child demands that he [or she] be taken from his [or her] parents' custody.'"  *Id.* at 873 (citations omitted) (brackets in original).  Clear necessity is established when the court determines that alternatives are not feasible.  *A.N. v. A.N.*, 39 A.3d 326 (Pa. Super. 2012).  *See In re A.L.*, 779 A.2d 1172, 1175 (Pa. Super. 2001) (following adjudication of dependency,

child may not be removed from care of parent absent showing of clear necessity for removal, namely, where welfare of child requires it).

Section 6302 of the Juvenile Act defines a "dependent child" as a child who:

> (1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk[.]

42 Pa.C.S. § 6302.

In *In re G., T.*, this Court further clarified the definition of "dependent child," stating, "[t]he question of whether a child is lacking proper parental care or control so as to be a dependent child encompasses two discrete questions: whether the child presently is without proper parental care and control, and if so, whether such care and control are immediately available." *Id.* at 872 (internal quotations and citations omitted); *see also In re J.C.*, 5 A.3d 284, 289 (Pa. Super. 2010). The burden of proof in a dependency proceeding is on the petitioner to demonstrate by clear and convincing evidence that a child meets that statutory definition of dependency. *In Interest of J.M.*, 652 A.2d 877, 880 (Pa. Super. 1995). Moreover, a child should not be found to be dependent merely because a sibling has been adjudicated dependent. *Id.* at 881.

Mother argues the Agency did not meet its burden of proving that W.S. is a dependent child under section 6302. In particular, Mother contends that since there are no indicated findings where W.S. is a victim, there is "no legal basis" for finding W.S. is a dependent child. Appellant's Brief, at 11.

This Court's decision in *In re M.W.*, 842 A.2d 425 (Pa. Super. 2004), is instructive. In *M.W.*, the mother of six children appealed the trial court's order adjudicating five of the children dependent. The sixth child, who was not involved in the appeal, had been sexually abused by the father. The mother argued that the trial court's dependency adjudication was in error since there was *no evidence that the father had abused or would abuse* the five other children; therefore, the only child placed at risk by unsupervised contact with the father was the one he had previously abused and whose dependency was not challenged. The mother, like Mother here, argued that a finding of sexual abuse as to one child should not translate into a finding of dependency as to other children.

Noting that "nothing in the Juvenile Act provides that all siblings of sexually abused children are necessarily dependent[,]" we found, however, that the 1997 amendments to the Juvenile Act evidenced increased sensitivity "to the fact that siblings of sexually abused children may be `without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental or emotional health, or morals.'" *Id.* at 429, citing 42 Pa.C.S. § 6302. We explained,

In our view, the Juvenile Act properly takes into consideration the sense of vulnerability, fear, and helplessness that siblings may feel when living in an environment where their brother or sister has been sexually abused by one parent, and the other parent (i.e., the other parent who has a duty to protect the emotional welfare of the children) has taken inadequate steps to stop it. In other words, the focus is not on whether the other siblings are actually at risk for sexual abuse themselves. Rather, the key question is whether the siblings fit the broader definition of lacking "proper parental care or control . . . necessary for his physical, mental or emotional health, or morals." 42 Pa.C.S.[] § 6302. *In our view, it is within the trial court's discretion to determine that siblings of sexually abused children fit that definition, even if there is no evidence that the siblings themselves will be sexually abused.*

*Id.* (emphasis added).

Here, in adjudicating W.S. dependent, the trial court reasoned as follows:

As for the son, W.S., the allegations are that these sexual contacts occurred within the family home over the course of time. Even though W.S. has not been identified as a victim of any sexual assault, there are certainly serious questions raised as to the family home environment; questions pertaining to what the family members may have observed or known; whether there were any disclosures made among the immediate family members, etc. Thus, we are satisfied that based upon the evidence admitted into the record to date, W.S. is a dependent child[,] as there are serious questions as to whether he has been provided proper parental care necessary for his physical, mental, or emotional health, or morals. [] This case involves very serious sexual abuse allegations and related criminal charges pending against [F]ather, which allegedly occurred within the family home, as well as serious concerns by the Agency, service providers[,] and this court as to [M]other's protective capacity. Therefore, it has been this court's intention to proceed carefully and cautiously, balancing our desire to maintain the relationship between the children and their mother, yet provide the necessary safeguards for the subject children.

- 11 -

Trial Court Opinion, 1/13/21, at 9-10, 12.

Although W.S. is not a victim in any of the indicated findings, the Agency did note allegations that Father had undressed in front of the children, including W.S. Moreover, with respect to W.S.,

> Referral source states [] Father did something to all children[.] There is a PFA against [F]ather. Father is stalking the family. Mom bought a gun. Mother does not know how to shoot the gun. Mother is afraid of [F]ather. Mother believes [F]ather is suicidal and homicidal. [F]rom what [M]other told [a] referral source [F]ather was talking a lot about sexual stuff. Father was talking about oral sex, hookers, sexual arousal, and [F]ather told [W.S.] that [M]other does not satisfy [F]ather.

N.T. Adjudicatory Hearing, 10/1/20, at 43-44.[9] Mother's arguments– that W.S. is not a dependent child because he is not a named victim in the Agency's founded reports, and that Mother is not involved in the sexual abuse allegations and has no criminal charges pending against her– miss the point. *See In re M.W.*, *supra* (where one sibling is abused and found to be dependent, it is within trial court's discretion to determine other siblings are dependent even if they are not abused); *In re S.B.*, 833 A.2d 1116 (Pa. Super. 2003) (same). In addition to Father's inappropriate sexual discussions with W.S., the evidence presented by the Agency, particularly the Agency's concerns with Mother's daily contact with Father, Mother's conflicted feelings with respect to the allegations, and how her financial dependence on Father

_____

[9] To clarify, even though the Agency had no founded allegations with respect to W.S., the pending criminal charges pertain to all three children. *See* N.T., *supra* at 47-48.

- 12 -

affects that conflict–established serious concerns "relative to [M]other's *protective capacity*." Trial Court Opinion, *supra* at 10 (emphasis added).

The trial court determined that the Agency established, by clear and convincing evidence, that W.S. was without proper parental care as required by law, or other care or control necessary for his physical or emotional health, or morals, and that the actions of both parents placed the health, safety and welfare of W.S. at risk. *See* 42 Pa.C.S. § 6302; *see also In re A.H.*, 763 A.2d 873 (Pa. Super. 2000) (parental duty of proper care and control includes a duty to protect child from harm others may inflict). After our review of the record, we are satisfied that the Agency established clear necessity for removal of W.S. We find no abuse of discretion in the court's assessment. *In re N.S.*, *supra*; *In re G.T.*, *supra*.

Next, Mother argues the trial court abused its discretion in requiring supervised contact with both H.S. and W.S. The trial court heard testimony from both the family therapist and the Agency caseworker with respect to their concerns about Mother's conversations with the children, her sharing information from Father in violation of the no-contact bail provision, her "shifting allegiances," and her attempts to get A.S. to "forgive" Father. As the Agency observed:

> At best, these types of interactions illustrate a grossly misguided understanding of the gravity of the situation at hand and at worst, illustrate possible collusion between [] Mother and Father in an effort to ward off the criminal charges he is presently facing. In either scenario, the fact that these conversations were occurring at all [,] not only places the children in the middle of a very difficult situation, but also creates a significant safety risk for all of the

subject children as a result of the Mother's lack of protective capacity.

Appellee's Brief, at 12.  The evidence supports the court's order requiring, for the time being, supervised contact only between Mother and the children.  We agree with the court's decision to proceed cautiously, and we find no abuse of discretion.  ***In re N.S.***, ***supra***; ***In re G.T.***, ***supra***.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  07/20/2021