In re: W.,M.; W.,R.; W.,R.; W.,D.; and W.,D., Minors.

**Appeal of: W.,T., Mother.**

Superior Court of Pennsylvania.

Argued Oct. 30, 2003.

Filed Jan. 22, 2004.

Sharon M. Biasca, Pittsburgh, for appellant.

Elisabeth Calcaterra, Pittsburgh, for appellees.

Wendy Kobee, Pittsburgh, for Children and Youth Services of Allegheny County, appellee.

Before: FORD ELLIOTT, MUSMANNO, and LALLY–GREEN, JJ.

LALLY–GREEN, J.

¶ 1 Appellant, T.W., appeals from the orders entered on March 19, 2003, adjudicating five of her six children dependent. The children at issue are R.W., d.o.b. 2/25/91; D.W., d.o.b. 1/25/95; D.W., d.o.b. 10/17/97; M.W., d.o.b. 2/23/2000; and R.W., d.o.b. 3/4/2002 (the "children"). The children were adjudicated dependent after the court determined that Appellant had permitted the children's father to have

continued contact with the children after learning that the father had sexually abused Appellant's sixth child, R.W., who is not at issue in this appeal.[1] We affirm.

¶ 2 The trial court set forth the factual and procedural history of the case as follows:

On February 21, 2003 a shelter hearing was held in the interest of twelve-year-old R.W. (who is not a subject of this appeal) and [the children]. Appellant, T.W., is the natural mother of all six children. The circumstances that led to the removal of the children were that the oldest child, R.W., disclosed that natural father had sexually abused her on more than one occasion, that the abuse began when she was five or six years old, that she had reported the abuse to her mother and that after she reported the abuse mother permitted father to return to the family home. Although the other children had not disclosed any abuse by their father, there were safety concerns because of mother's failure to protect R.W. At the conclusion of the shelter hearing this court ordered the children to remain in placement and ordered Children Youth and Family Services (CYF) to file petitions for dependency for all the children.

A hearing on the petitions for dependency was held on March 12, 2003. CYF alleged in the petitions that R.W. had been sexually abused by her father during a six or seven year period of time and that Appellant was aware of the abuse. CYF further alleged that after Appellant became aware of the abuse

that she allowed natural father to return to the family home and allowed him to have contact with her children, putting them at risk. At the conclusion of the testimony on March 12, 2003, this court found by clear and convincing evidence, that R.W. was dependent. As to the remaining children, this court continued the hearing until forensic evaluations were available for the court's review. The matter was continued until March 19, 2003.

On March 19, 2003, additional evidence was presented to this court. After considering all of the testimony and evidence, this court found clear and convincing evidence that the remaining children were dependent due to mother's failure to protect the children by allowing father to care for the children after learning of the sexual abuse of R.W. by father. However, the court considered the emotional devastation of all six children in being separated from their mother and each other and found it to be in the best interest of the children to return them to Appellant's care with intensive in-home services. Appellant was also ordered to participate in non-offenders sexual counseling.

Trial Court Opinion, 5/19/2003, at 1–2. This appeal followed.[2]

¶ 3 Appellant raises one issue on appeal:

Did the trial court abuse its discretion and err as a matter of law in finding sufficient evidence of dependency and adjudicating Children dependent pursu-

---

1. We recognize that the nomenclature in this case may be confusing because two other children at issue in the instant appeal have the initials R.W. Nevertheless, like the trial court, we will refer to the children at issue in this appeal collectively as "the children." We will refer to Appellant's eldest child, the victim of father's sexual abuse, separately as "R.W."

2. Appellant complied with the trial court's order to file a Concise Statement of Matters Complained of on Appeal under Pa.R.A.P. 1925. Appellant raised the issue set forth above.

ant to the Juvenile Act, 42 Pa.C.S. § 6301 et seq.?

Appellant's Brief at 4.

¶ 4 Our scope and standard of review is as follows:

> In dependency proceedings our [scope] of review is broad. Nevertheless, we will accept those factual findings of the trial court that are supported by the record because the trial judge is in the best position to observe the witnesses and evaluate their credibility. We accord great weight to the trial judge's credibility determinations. Although bound by the facts, we are not bound by the trial court's inferences, deductions, and conclusions therefrom; we must exercise our independent judgment in reviewing the court's determination, as opposed to its findings of fact, and must order whatever right and justice dictate.

*In re S.J.L.*, 2003 PA Super 168, P14, [828 A.2d 352, 355]2003 Pa.Super. LEXIS 876, *8–9 (Pa.Super. April 29, 2003), (internal quotations and citations omitted.)

> 'A court is empowered by 42 Pa.C.S. § 6341 [**Adjudication**] (a) [**General rule**] and (c) [**Finding of dependency**] to make a finding that a child is dependent if the child meets the statutory definition by clear and convincing evidence. [ . . . ]

*In re D.A.*, 2002 PA Super 184, 801 A.2d 614, 617 (Pa.Super.2002) (*en banc*), quoting *In re M.L.*, 562 Pa. 646, 649, 757 A.2d 849, 850–851 (2000).

*In the Interest of S.B.*, 2003 PA Super 286, ¶ 3, 833 A.2d 1116 (footnote omitted).

■ ¶ 5 First, Appellant argues that the trial court erred in finding that the children were placed at risk when Appellant allowed the father to continue to have unsupervised contact with the children. Specifically, Appellant argues that the only child placed at risk by this situation was R.W., the abused child. Appellant contends that because the court heard no evidence that father had abused or would abuse the remaining children, those children cannot be considered "at risk."

■ ¶ 6 A "dependent child" is defined, in relevant part, as one who is "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian, or other custodian that places the health, safety or welfare of the child at risk[.]" 42 Pa.C.S.A. § 6302. "The question of whether a child is lacking proper parental care and control so as to be a dependent child encompasses two discrete questions: whether the child presently is without proper care and control, and if so, whether such care and control are immediately available." *In re D.A.*, 801 A.2d at 619.

¶ 7 This Court addressed a substantially similar issue in *S.B.*, *supra*. In that case, the father had sexually abused one sibling, but there was no evidence that he had sexually abused the other child. The court found both children dependent. The parents, like Appellant here, argued that a finding of sexual abuse as to one child should not translate into a finding of dependency as to other children. The *S.B.* Court disagreed. The Court responded that, beginning in 1997, federal and state law has taken an expanded view as to who may be considered a dependent child. Specifically, the Court noted that the Juvenile Act has been amended to take notice of "aggravating circumstances," which include a finding that a sibling in the home

has been sexually abused. *Id.* at ¶¶ 11–14. According to the *S.B.* Court, "[t]he various citations to aggravated circumstances detailed above are from the [federal Adoption and Safe Families Act] and **expand its definition of dependency** to include children of abusive families who, while not themselves seriously abused, are 'another child of a parent when the sibling has been abused or subject to sexual violence.'" *Id.* at ¶ 13 (emphasis added).

¶ 8 We do note that the Juvenile Act itself did not expressly expand the statutory definition of "dependent children" to include siblings of sexually abused children. In other words, nothing in the Juvenile Act provides that all siblings of sexually abused children are necessarily dependent. Nevertheless, we agree with the *S.B.* Court that the Juvenile Act is now significantly more sensitive to the fact that siblings of sexually abused children may be "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental or emotional health, or morals." This may be so for several reasons. It may be that a family member who perpetrates sexual abuse on one child is likely to abuse another child, either sexually or otherwise. It may also be the case that when a parent allows sexual abuse of one child to go unchallenged, siblings in that family are so emotionally vulnerable that they may be considered lacking in proper care and control. In our view, the Juvenile Act properly takes into consideration the sense of vulnerability, fear, and helplessness that siblings may feel when living in an environment where their brother or sister has been sexually abused by one parent, and the other parent (*i.e.*, the other parent who has a duty to protect the emotional welfare of the children) has taken inadequate steps to stop it. In other words, the focus is not on whether the other siblings are actually at risk of sexual abuse themselves. Rather, the key question is whether the siblings fit the broader definition of lacking "proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental or emotional health, or morals." 42 Pa.C.S.A. § 6302. In our view, it is within the trial court's discretion to determine that siblings of sexually abused children fit that definition, even if there is no evidence that the siblings themselves will be sexually abused.

¶ 9 In finding that the children were dependent, the trial court reasoned as follows:

Specifically, this court found that father sexually abused R.W. and that Appellant, after learning of the abuse, not only failed to notify the police but allowed father to return to her home and continue unsupervised contact with R.W. (resulting in continued sexual maltreatment) and the other five children and therefore placed the health, safety, and welfare of all of the children at risk. In reaching this decision, this court certainly acknowledged that Pennsylvania case law clearly holds that a finding of dependency as to one child does not automatically mean that the other children are dependent. **In this case, however, Appellant permitted father to return to her home and have unsupervised contact with all of the children, after R.W. had disclosed the abuse. Additionally, Appellant permitted father to have access to her home and unsupervised contact with her children after she knew the police and CYF were investigating the matter.**

Based on the testimony received, the evidence clearly showed, by clear and convincing evidence, that R.W. and her five siblings were without proper paren-

tal care as required by law, or other care or control necessary for their physical or emotional health, or morals and that the actions of **both parents** placed the health, safety and welfare of these children at risk.

Trial Court Opinion, 5/19/2003, at 9 (emphasis in original, footnote omitted). We see no abuse of discretion in this assessment. *S.B.*, *supra*. Appellant's first issue lacks merit.

■ ¶ 10 Next, Appellant argues that the trial court failed to conduct a broad and thorough inquiry into Appellant's parenting skills or her present ability to care for the children. Again, one component of a dependency determination is that proper care and control must not be immediately available. *D.A.*, 801 A.2d at 619. This Court recently explained this concept as follows:

Pennsylvania law makes clear that a finding of dependency can be made on the basis of prognostic evidence and such evidence is sufficient to meet the strict burden of proof necessary to declare a child dependent. *In Interest of Black*, 273 Pa.Super. 536, 417 A.2d 1178 (Pa.Super.1980) (holding prognostic evidence sufficient for finding of dependency of newborn infant where parent's two previous children died because of parent's improper care and failure to take necessary precautions). The court must make a comprehensive inquiry into whether proper parental care is immediately available or what type of care Mother could provide in the future. *Matter of DeSavage*, 241 Pa.Super. 174, 360 A.2d 237 (Pa.Super.1976) (rejecting argument that child cannot be adjudicated dependent unless child is actually in custody of parents and they are shown unable to render care or control as defined in statute). In this regard, the *DeSavage* Court reasoned:

Obviously, state interference with a parent-child relationship is a most serious intrusion...such an intrusion is properly tolerated only in cases in which the Commonwealth sustains a very strict burden of proof.... The rule of law appellants request us to announce is overly restrictive. The legislature defined ["dependent child"] in exceedingly broad terms precisely because it is impossible to foresee all the possible factual situations that may arise. Further the broad definition enables the experienced juvenile court judge to apply his training and compassion to the unique facts of each case. The proposition asserted by appellants would compel the juvenile court judge to place the child in the home of the natural parents to determine whether they are able to render proper care, and ignores the possibility that if the "experiment" proves unsuccessful, the consequences to the child could be seriously detrimental or even fatal.

*Id.* at 241–42.

*In the Interest of R.W.J.*, 826 A.2d 10, 14–15 (Pa.Super.2003).

¶ 11 In the instant case, we note initially that the trial court did not hear testimony from psychologists or other heath-care professionals with regard to Appellant's current parenting skills and her capability for caring for the children in the future. This Court has long held that such testimony is advisable. *See, D.A.*, *supra*; *In re Swope*, 391 Pa.Super. 484, 571 A.2d 470 (1990). Such testimony can help to establish whether past abuse was merely an isolated incident, or predictive of future harm. *Swope*. We decline to hold that such testimony is always required, however. The inquiry must simply be comprehensive enough to establish by clear and convincing evidence that proper care and

control of the children is not immediately available. *See, R.W.J., supra.*

¶ 12 In the instant case, the trial court heard testimony establishing not only that Appellant allowed father to sexually abuse R.W., but also that she continued to allow father unsupervised contact with the children even after the police and CYF began investigating the matter. Indeed, police officers testified that just one month prior to the dependency hearing, Appellant had resisted police efforts to set up a forensic interview of R.W. because the family had discussed the matter and "dealt with it in their own way." Trial Court Opinion, 5/19/2003, at 7. During this phone conversation with Appellant, police heard father's voice on the line. *Id.* Next, even though R.W. had disclosed the abuse to Appellant, it was R.W.'s grandmother, rather than Appellant, who reported it to police. *Id.* at 6. In our view, this evidence goes beyond the mere existence of potentially isolated instances of abuse in the past. Instead, it demonstrates that Appellant will continue to choose father's presence in her home over the safety of her children. Given that the Juvenile Act was amended in 1998 to emphasize the importance of child safety, we see no abuse of discretion or error of law in the trial court's finding of dependency.

¶ 13 In connection with this issue, Appellant argues that the court failed to take into account such facts as: (1) at the time of the adjudication, Father was incarcerated and could not pose a threat to the children; and (2) Mother demonstrated a willingness to keep father out of the home. First, we note that it is easy to declare that father is unwelcome in the home at a time that father is incarcerated. Appellant's choices while father was **out** of jail

speak louder than her current declarations. *R.W.J.,* 826 A.2d at 15. Second, these facts are more pertinent to the post-dependency placement of the children. In other words, the nature of the dependency was such that the children could remain in the home, and would not be at any immediate risk from father, but that the children and mother would benefit from the counseling and programs that are available to families of dependent children. Indeed, the court found that it would be in the best interests of the children that they stay in Mother's custody, with intensive supervision by CYF. Trial Court Opinion, 5/19/03, at 10 ("Father's incarceration, intensive services in the home, Appellant's participation in non-offenders counseling (designed to increase her understanding of sexual abuse and how to protect her children) along with the watchful eye of the court, satisfied this court that the children would be safe.") The court is empowered to make this choice after adjudicating the children dependent. *S.B., supra* at ¶¶ 16–17. Appellant's second claim fails.

¶ 14 Finally, Appellant argues that the trial court applied a "best interests of the children" standard rather than the "clear and convincing evidence" standard when evaluating this case. Where a trial court orders an Appellant to file a Concise Statement of Matters Complained of on Appeal under Pa.R.A.P.1925, any issues not raised in that statement will be deemed waived. *Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306, 309 (1998); *Lobaugh v. Lobaugh,* 753 A.2d 834, 837–838 (Pa.Super.2000). The record reflects that Appellant did not raise this issue in her Rule 1925 statement.[3] Accordingly, it is waived. Even if it were not waived, the issue is meritless. Appellant points only

---

**3.** In contrast, Appellant's first two arguments are legitimately encompassed within the single issue she raised in her Concise Statement: namely, whether clear and convincing evidence existed to adjudicate the children dependent.

to a single remark from the trial court that the children would benefit from "the watchful eye of the court." Appellant's Brief at 17, *quoting,* Trial Court Opinion, 5/19/2003, at 10. It is clear that the "watchful eye" remark was directed to the court's chosen **remedy** of keeping the children with Appellant **after** adjudicating them dependent. *Id.* It is well established that after adjudicating a child dependent, the court may enact a broad range of remedies tailored to the best interests of the child. 42 Pa.C.S.A. § 6341(c); § 6351(a); *In re M.L.,* 562 Pa. 646, 757 A.2d 849, 850–851 (2000). Such is the case here. Nothing in the trial court's opinion indicates that the court used a "best interests" standard in the initial dependency determination. Appellant's final claim fails.

¶ 15 Orders affirmed.