J-A17011-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: G.P., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: G.P., FATHER | |
| | No. 572 EDA 2021 |

Appeal from the Order Entered February 26, 2021
In the Court of Common Pleas of Monroe County Juvenile Division at
No(s): CP-45-DP-0000017-2021

| | |
|---|---|
| IN THE INTEREST OF: D.P., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: G.P., FATHER | |
| | No. 573 EDA 2021 |

Appeal from the Order Entered February 26, 2021
In the Court of Common Pleas of Monroe County Juvenile Division at
No(s): CP-45-DP-0000018-2021

BEFORE:   McLAUGHLIN, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:        **FILED SEPTEMBER 24, 2021**

G.P. ("Father") appeals from the order adjudicating as dependent his

two children, G.P. and D.P. (collectively, "Children").[1] He contends the trial

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Father properly filed a separate appeal regarding each child's dependency adjudication under each separate docket number. This Court consolidated the cases *sua sponte* in an order dated April 14, 2021.

court erred because there was no evidence Father could not provide parental care and control. We affirm.

The underlying facts, as noted by the trial court, are as follows:

> The case began on January 25, 2021, with an initial referral to the Agency [Monroe County Children and Youth Services] regarding allegations of domestic abuse between the minor children's natural Mother [C.P.] and her paramour. Upon the recommendation of a caseworker, Mother had her paramour leave the home. Pursuant to the Agency's request, Mother provided a urine drug screen on January 27, 2021, and such drug screen tested positive for cocaine, codeine, and morphine. On February 8, 2021, Mother again tested positive for cocaine and morphine. When caseworker addressed these results with Mother, she denied using such drugs during the initial visit from the caseworker. Mother further tested positive for cocaine and morphine for a third time on February 10, 2021. [G.P.], who is the children's natural Father, resides in New York State and is currently separated from Mother.

> Emergency Protective Custody was sought and granted for [Children] on February 17, 2021, as a result of Mother's apparent continuing use of illicit drugs. [G.P. was nine years old at the time, and D.P. was six.] Protective Custody was continued by this Court at the Shelter Care hearing held on February 19, 2021. On February 24, 2021, a Dependency petition was filed seeking [Children] to be declared dependent. A Dependency Adjudication Hearing was held on February 26, 2021. At the hearing, Father stated his position as wanting [Children] to be placed with him and that dependency was not needed. (Hearing of February 26, 2021 at page 45) (hereinafter "N.T. at _"). However, testimony from the caseworker indicated that the child, [G.P.], had a real and profound fear of his Father. (N.T. at 15). When the caseworker asked [Children] about their Father, the minor child, [G.P.] expressed that he is afraid to be with Father and stated that he witnessed physical abuse between Father and Mother when they lived together in New York. The Agency and the Guardian Ad Litem appointed to represent [Children] requested a finding of dependency. (N.T. at 4, 47). We found [Children] dependent and asked the Agency to consider both maternal and paternal sides of the family as kinship resources as well as to begin counseling

between Father and G.P. for purposes of their reunification. (N.T. at 52-53).

Tr. Ct. Pa.R.A.P. 1925(a) Op., 5/3/21, at 1-2.

Father testified at the dependency hearing that after he and Mother separated, Mother and Children moved to Pennsylvania and he visited with the Children about once a month. N.T. at 36. Father's last visit with D.P. was approximately three months before the hearing, in December 2020, and he had not visited with G.P. for at least one or two months before that. Father also claimed that he formerly communicated with Children on a daily basis through social media, but that communication ceased when he was "blocked" from Children's Facebook accounts once they were in foster care. *Id.* at 37.

Father also provided testimony from his uncle ("Paternal Uncle") who described an incident that occurred when both Children and Father were visiting at his home in New Jersey during the summer of 2020. *Id.* at 44-45. During the visit, G.P. experienced a severe panic attack and Paternal Uncle had to call Mother for assistance in handling the episode. *Id.* Mother told Paternal Uncle that G.P. needed to take the medication he had with him in order to calm down. *Id*. Ultimately, Mother had to drive to Paternal Uncle's home at around 1:00 a.m. to pick up G.P. *Id*.

The trial court, in a February 26, 2021 order, adjudicated the Children dependent. Father filed the instant timely appeal and both Father and the trial court complied with Pa.R.A.P. 1925.

Before this Court, Father challenges the sufficiency of the evidence:

1. Whether the trial court abused its discretion by adjudicating G.P. a dependent child where there was no clear and convincing evidence that proper parental care and control was not available through Father?

2. Whether the trial court abused its discretion by adjudicating D.P. a dependent child where there was no clear and convincing evidence that proper parental care and control was not available through Father?

Father's Br. at 4.

In his first issue, Father argues that the trial court erred by finding that clear and convincing evidence supported the conclusion that G.P. was dependent. He asserts that the evidence presented did not support the trial court's conclusion that G.P. had a substantial fear of Father. Father points out that he did visit with G.P. and he did communicate with him via Facebook prior to being "blocked" once G.P. entered foster care. Thus, according to Father, G.P. could not have been in substantial fear of him given their frequent contact. He also maintains that the court erroneously interpreted the testimony of Paternal Uncle to conclude that he could not adequately care for his son during a panic attack. He contends that G.P. calmed down once he took his medication, and not as a result of Paternal Uncle's or Mother's actions. Hence, Father avers that the court improperly concluded that the evidence established that he could not adequately care for G.P. We disagree.

We review the grant of a dependency petition for an abuse of discretion. *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). We "accept the findings of fact and credibility determinations of the trial court if they are supported by the

record." *Id.* However, we are not bound by the trial court's "inferences or conclusions of law." *Id.*

The Juvenile Act defines a dependent child as a child "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for [the child's] physical, mental or emotional health, or morals." 42 Pa.C.S.A. § 6302. Thus, a child will only be declared dependent if the child "is presently without proper parental care and when such care is not immediately available." *In re A.B.*, 63 A.3d 345, 349 (Pa.Super. 2013) (citation omitted). "This Court has defined 'proper parental care' as 'that care which (1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child.'" *Id.* (citation omitted).

The "burden of proof in a dependency proceeding is on the petitioner to demonstrate by clear and convincing evidence that a child meets [the] statutory definition of dependency." *In re M.T.*, 101 A.3d 1163, 1173 (Pa.Super. 2014) (*en banc*) (citation omitted). Clear and convincing evidence is evidence that is "so clear, direct, weighty, and convincing as to enable the trier of facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *In re A.B.*, 63 A.3d at 349 (citation omitted).

Here, the trial court aptly concluded that Father was not able to provide proper parental care for G.P.:

> Here, proper parental care and control is not immediately
> available for G.P. or D.P. At the dependency adjudication hearing
> the caseworker testified that the minor child G.P. has been

- 5 -

"adamant and consistent in saying he is fearful" of Father. (N.T. at 15). The caseworker also testified that G.P. stated that he witnessed [Father] become physically violent with [Mother]. (N.T. at 15). Father admitted that since his separation from [Mother], he has only had infrequent custody of [Children]. (N.T. at 36). Further into the proceeding, [Paternal Uncle], testified that during the summer 2020, G.P. had a "panic attack" about five days into a visit. (N.T. at 44). Father was present along with other family members and nobody was able to calm G.P. (N.T. at 44). Mother was called to pick him at around 1:00 AM. (N.T. at 44). She told [Paternal Uncle] to give him medication he was on because G.P. did not take it that day. (N.T. at 44-45). [Paternal Uncle] testified that after this, G.P. "kind of calmed down." (N.T. at 45). Given the strong fear G.P. currently has of Father, and in addition, to the evidence that Father himself was unable to calm G.P. during a panic attack, the Court is convinced that Father is currently unable to provide proper parental care for G.P.'s mental or emotional health.

Tr. Ct. Pa.R.A.P. 1925(a) Op., 5/3/21, at 4.

We conclude that the record supports the trial court's determinations that Father was unable to provide proper parental care and control for G.P. and that G.P. was therefore dependent. *See* 42 Pa.C.S.A. § 6302; *In re A.B.*, 63 A.3d at 349. The court was well within its purview when crediting the testimony that G.P. was fearful of Father because he had seen Father commit domestic violence. *See In re R.J.T.*, 9 A.3d at 1190. Nor did the court abuse its discretion by finding Paternal Uncle's testimony credible and determining that Father was not able to assist G.P. during a medical episode. *See id.* Accordingly, we discern no abuse of discretion in the trial court's determination that G.P. was dependent.

In his second issue, Father contends that the trial court erred by declaring D.P. dependent only because it had found her brother to be

dependent. Father's Br. at 13 (citing **In Interest of J.M**., 652 A.2d 877 (Pa.Super. 1991)). Father emphasizes that this Court has determined that a child should not be deemed dependent solely because a sibling has been adjudicated dependent. Father also points out that the Agency did not produce any testimony that D.P. has any fear of Father similar to G.P. To the contrary, Father asserts that he has a good relationship with D.P., which has included regular overnight visits since the time Mother moved Children to Pennsylvania. Once again, we cannot conclude that the trial court abused its discretion.

While a court may not adjudicate a child dependent solely because a sibling has been adjudicated dependent, this legal precept is often of limited utility in practical application because of the evidence in a given case about the impact that family circumstances have on the subject child. That is, courts do not have to ignore the effect that factors leading to a sibling's adjudication of dependency may have had on the child at issue. **See In re M.W.**, 842 A.2d 425, 429 (Pa.Super. 2004) (recognizing that the Juvenile Act "properly takes into consideration the sense of vulnerability, fear and helplessness" a sibling of an abuse victim may feel when living in the same environment). The relevant question remains whether the sibling at issue lacks proper parental care or control. **Id.**

The evidence here was sufficient to support finding D.P. dependent. Certainly, a court cannot declare a child dependent when the non-custodial parent is ready, willing, and able to provide the child with proper parental care and control. **See In the Interest of Justin S.**, 543 A.2d 1192, 1199

(Pa.Super. 1988). However, where a non-custodial parent is available, the non-custodial parent must be sufficiently present in the child's life to be found ready, willing, and able to discharge parental duties. ***See In re B.B.***, 745 A.2d 620 (Pa.Super. 1999) (affirming finding of dependency, over non-custodial father's claim that he was able to care for children, where father had rarely seen them).

In this case, the court aptly considered Father's limited visitation and contact with D.P. once Mother and the Children moved to Pennsylvania. ***See In re B.B.***, 745 A.2d at 622-23. Father was at best an intermittent visitor with D.P., with months between visits. The court also properly took into account D.P.'s close relationship with her sibling G.P., G.P.'s allegations of a substantial fear of Father, and the resulting environment for D.P. Accordingly, we discern no abuse of discretion in the court's decision to adjudicate D.P. dependent.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/24/2021