J-A22030-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: T.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1044 EDA 2025 |

Appeal from the Order Entered March 28, 2025
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-DP-0000166-2025

| | | |
|---|---|---|
| IN THE INTEREST OF: J.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: T.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1045 EDA 2025 |

Appeal from the Order Entered March 28, 2025
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-DP-0000167-2025

| | | |
|---|---|---|
| IN THE INTEREST OF: N.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1046 EDA 2025 |

Appeal from the Order Entered March 28, 2025
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-DP-0000168-2025

J-A22030-25

BEFORE:   LAZARUS, P.J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LANE, J.:                    **FILED DECEMBER 16, 2025**

T.S. ("Father") appeals from the orders adjudicating his three children, J.S. ("Ja.S."), a female, born in October 2021, J.S. ("Je.S."), a male, born in January 2023, and N.S., a male, born in October 2024 (collectively, the "Children"), dependent pursuant to the Juvenile Act.[1]  After careful review, we affirm.

We gather the relevant factual and procedural history of this matter from the certified record.   On September 15, 2022, the Philadelphia Department of Human Services ("DHS") received a general protective services ("GPS") report alleging that Father and the Children's biological mother, S.R. ("Mother") (collectively, "Parents"),[2] were not meeting the medical needs of Ja.S., who was born with an enlarged heart and liver.  ***See*** N.T., 3/28/25, at 5-6.   Thereafter, DHS arranged for a local Community Umbrella Agency ("CUA") to begin providing services to the family.  ***See id.*** at 7.  CUA assisted Parents with scheduling and attending medical appointments for Ja.S.  ***See id.*** at 7, 15.  CUA also helped Parents stabilize their housing, as they had been evicted from a former home prior to DHS involvement.  ***See id.*** at 7.   In

_____

[*] Former Justice specially assigned to the Superior Court.

[1] ***See*** 42 Pa.C.S.A. §§ 6301-6387.

[2] Mother did not file notices of appeal from the orders adjudicating Children dependent.

- 2 -

approximately August 2024, Parents moved into new housing with the financial assistance of CUA.  *See id.* at 7, 16.

While CUA was providing support to the family, DHS received three new reports on February 25, 2025.  *See id.* at 7.  The first was a GPS report alleging, *inter alia*, concerns of housing instability and medical neglect of the Children.  *See id.*  There were two additional child protective services ("CPS") reports, which indicated that Father was biting three-year-old Ja.S. and two-year-old Je.S. as a form of discipline.  *See id.* at 7-8.

DHS investigator, Charlene Walker ("Walker"), and CUA case manager, Terrence Molock ("Molock"), went to the family home on February 26, 2025, to investigate the new reports.  *See id.* at 8, 16.  The investigation revealed that Parents were at risk of another eviction due to failure to pay rent.  *See id.* at 15-16.  Father acknowledged that Parents had missed the most recent medical appointment for Ja.S.  *See id.* at 9.  Parents admitted that Father utilized biting as a disciplinary method.  *See id.* at 10-11.  Finally, Walker also observed that the entire family slept together on one mattress, which she noted was of particular concern for four-month-old N.S.  *See id.* at 9-10.

On February 26, 2025, following the home visit, the trial court placed the Children in the emergency protective custody of DHS.  Two days later, the court held shelter care hearings, wherein it confirmed DHS's custody of the Children and maintained their placement together in a foster home.

On March 11, 2025, DHS filed a dependency petition with respect to the Children, based upon a lack of proper parental care and control pursuant to Section 6302(1) of the Juvenile Act. *See* 42 Pa.C.S.A. § 6302(1). DHS requested that the trial court adjudicate Children dependent and maintain their placement in foster care.

The trial court held a hearing on the dependency petition on March 28, 2025. Parents were represented by separate counsel, and the Children were represented by a guardian *ad litem*.[3] Father appeared for the hearing but did not testify. DHS presented the testimony of its investigator Walker, CUA case manager Molock, and Mother.

By orders entered on March 28, 2025, the trial court granted DHS's dependency petition. The court adjudicated Children dependent, maintained DHS's custody of Children, and continued their foster care placement.

Father timely filed notices of appeal and contemporaneous concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court thereafter filed a Rule 1925(a) opinion. This Court consolidated these appeals *sua sponte*.

On appeal, Father raises one issue for our review: "Did the [t]rial [court] rule in error that [DHS met] its burden of proof that the [Children] should be adjudicated dependent under 42 Pa.C.S.[A. §] 6302(1)?" Father's Brief at 6.

_____

[3] The Children's guardian *ad litem* filed a brief in this Court in support of the trial court's March 28, 2025 orders.

- 4 -

In dependency matters, we "accept the trial court's findings of fact and credibility determinations when supported by the record," but we need not accept the court's inferences or conclusions of law. ***In the Interest of S.D.***, 334 A.3d 919, 925 (Pa. Super. 2025). Accordingly, we review for an abuse of discretion. ***See id.***

This Court has explained:

> A dependency hearing is a two-stage process governed by the Juvenile Act. The first stage requires the court to hear evidence on the dependency petition and to determine whether the child is dependent. ***See*** 42 Pa.C.S.A. § 6341(a). Section 6302, defines a "dependent child," in part, as one who:
>
> > is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent . . . that places the health, safety or welfare of the child at risk[.]
>
> 42 Pa.C.S.A. § 6302(1). This Court has held a child will be declared dependent when he is presently without proper parental care or control, and when such care and control are not immediately available. ***See In re G.T.***, 845 A.2d 870, 872 (Pa. Super. 2004). Proper parental care has been defined as "that care which (1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child." ***In re A.B.***, 63 A.3d 345, 349 (Pa. Super. 2013) (internal quotation marks and citation omitted). "The question of whether a child is lacking proper parental care and control encompasses two discrete questions: whether the child presently is without proper care and control, and if so, whether such care and control is immediately available." ***In re M.W.***, 842 A.2d 425, 428 (Pa. Super. 2004) (citation omitted). In answering the first question, the paramount concern is the "welfare of the child at the time of the hearing." ***In the Interest of Black***, 417 A.2d 1178, 1183 (Pa. Super. 1980). In answering [] the second question, "it may

- 5 -

be necessary for the hearing court to look to the future." ***Id.*** at 1182.

> A finding that a child is dependent requires proof by "clear and convincing evidence," *i.e.*, testimony that is "so clear, direct, weighty, and convincing as to enable the trier of facts to come to a clear conviction, without hesitancy, of the truth of the precise facts at issue." ***Matter of C.R.S.***, 696 A.2d 840, 843 (Pa. Super. 1997) (internal quotation marks and citation omitted). If the court finds a child dependent, it proceeds to the second stage of the dependency process, which requires an appropriate disposition based on the best interest of the child pursuant to section 6351 (a) and ([c]). ***See*** 42 Pa.C.S.A. § 6341(a), (c); ***see also In re B.S.***, 923 A.2d 517, 521 (Pa. Super. 2007).

***Interest of S.D.***, 334 A.3d at 925-26. We note that a "finding of dependency can be made on the basis of prognostic evidence and such evidence is sufficient to meet the strict burden of proof necessary to declare a child dependent." ***Id.*** at 926 (*quoting **In re E.B.***, 83 A.3d 426, 433 (Pa. Super. 2013)).

In his sole issue, Father argues that the record evidence was insufficient to prove that the Children are presently without proper parental care or control, and that such care and control is not immediately available. Specifically, Father asserts that the trial court adjudicated the Children dependent based upon Parents' housing instability. Father contends that the Children are not presently without proper parental care or control because Parents had adequate housing at the time of the hearing, and that such care and control is immediately available.

In its opinion, the trial court explained that DHS presented clear and convincing evidence that Parents failed to provide proper parental care and

control of the Children and such care and control was not immediately available. The court noted that "the main issue [in this case] is the housing instability of the family." Trial Court Opinion, 5/23/25, at 3. The court found that "the family is in danger of imminent eviction for failing to pay rent," there was "no evidence of employment or the ability to pay the" the back rent, and Parents were only able to secure housing with financial assistance. *Id*. at 4. The court therefore determined Parents "have not demonstrated the ability to provide a stable home environment" and the Children were properly adjudicated dependent under the Juvenile Act. *Id*.

Based on our review, we conclude that the record supports the trial court's findings that the Children are presently without proper parental care or control and that such care and control is not immediately available. Father correctly asserts that the family had adequate housing at the time of the subject hearing. *See* N.T., 3/28/25, at 7. However, Walker and Molock testified that Parents had not paid rent in seven months and were consequently at risk of losing this housing. *See id.* at 7, 15-16.

Relatedly, Parents' inability to maintain their housing is a foreseeable result of their lack of verifiable income to support themselves and the Children. Molock testified that Mother was unemployed, and Father reported employment at Amazon and as an Uber driver but had not provided any corroborating documentation. *See id.* at 15. The foregoing evidence sufficiently supports that the Children are presently without proper parental

care or control.  ***See Interest of S.D.***, 334 A.3d at 927-28 (reiterating that housing and employment concerns are routine circumstances of dependency); ***see also In the Interest of K.B.***, 331 A.3d 50, 60 (Pa. Super. 2025) (stating that evidence regarding the mother's lack of employment, ability to support herself and the child, and ability to obtain suitable housing without any source of income is relevant to the required inquiry for a dependency adjudication).

In addition, the subject orders are supported by the undisputed testimony regarding Parents' medical neglect of the Children.  Walker testified that her investigation uncovered that the Children were behind on routine medical and dental care, despite CUA's assistance with scheduling medical appointments.  ***See*** N.T., 3/28/25, at 7.  This was of particular concern for Ja.S. because of her heart and liver conditions.  ***See id.*** at 6-7.

Parents repeatedly provided excuses for their disregard of their parental responsibility to ensure that the Children's medical and dental care were current.  ***See id.*** at 8-9, 15, 20.  For example, Walker testified that when she asked why Parents missed a medical appointment for Ja.S., Father said that Parents could not take her because "he had just started a new job at Amazon" and Mother "was on her menstrua[l] cycle."  ***Id.*** at 8-9.  Additionally, Molock testified that Father gave multiple explanations for missing appointments: he was generally busy, he had to work as an Uber driver, or he could not afford transportation.  ***See id.*** at 15, 20.  When Molock offered public transit passes to assist with transportation, Father responded that "it was too cold" outside

to attend the appointments. *Id.* at 20. Molock explained that he personally transported the family to some appointments to ensure their attendance. *See id.* Walker testified that the Children were only current on their medical care as of the date of the hearing because of CUA's assistance. *See id.* at 14.

This record also establishes that the family ignored explicit safety concerns about sleeping together. Walker testified that the Children are co-sleeping with Parents on a single mattress on the floor of a bedroom, despite the fact that CUA had provided individual beds for the Children. *See id.* at 9. Walker stated that she explained to Parents why co-sleeping is unsafe for four-month-old N.S., including concerns about sudden infant death syndrome. *See id.* at 9. She further testified that Mother confirmed that, upon N.S.'s birth, the hospital explained that co-sleeping was unsafe for the child and instructed that he sleep in his own bed. *See id.* at 9. Walker testified that Mother completely dismissed these safety warnings and stated she was going to continue co-sleeping with N.S. because Parents were often too tired to place him in his own bed. *See id.* at 9-10.

Moreover, with respect to the allegations that Father uses biting as a form of discipline with Ja.S. and Je.S., Walker testified that she told Parents that biting is "inappropriate discipline." *Id.* at 10-11. Walker stated that, in response, Father inquired, "well how else [do you] expect [me] to discipline the [C]hildren[?]" *Id.* at 11. Thus, this evidence also supports the orders of adjudication and disposition.

Based on the totality of the evidence, we conclude that the record supports the trial court's findings that the Children are presently without proper parental care or control and that such care and control is not immediately available. *See Interest of S.D.*, 334 A.3d at 925. Therefore, the court did not abuse its discretion in adjudicating the Children dependent. *See id*. Father's issue merits no relief. Accordingly, we affirm the March 28, 2025 orders.

Orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/16/2025